CHARLES RAY AND DOROTHY RAY, APPELLEES, V.
GILBERT L. SULLIVAN AND MARCIA M. SULLIVAN, APPELLANTS.

568 N.W.2d 267

Filed August 12, 1997.    No. A-96-520.

William P. Neubauer for appellants.

Terry Curtiss, of Curtiss, Moravek, Curtiss & Margheim, for appellees.

SIEVERS, MUES, and INBODY, Judges.

SIEVERS, Judge.

This opinion, arising out of an action to recover a deficiency on a promissory note, examines whether payment of a judgment after an issued, but unserved, execution on that judgment can be considered a voluntary payment which cuts off the right to an appeal. We also touch upon the need for postjudgment affidavits filed in the appellate court to explain how and why a judgment being appealed was paid during the pendency of the appeal.

## FACTUAL BACKGROUND

Charles Ray and Dorothy Ray sold their business, Silver Line Salvage, to Gilbert L. Sullivan and Marcia M. Sullivan on or about March 30, 1991, pursuant to a contract. Silver Line Salvage consisted of certain real estate, equipment, and inventory. The Rays financed the acquisition by accepting back a promissory note in the amount of $150,000, together with interest at 8 percent per annum, to be paid in monthly installments by the Sullivans. The note was secured by an interest in all of the personal property of the business and by a trust deed for the real estate with power of sale in favor of the Rays as beneficiaries. After the Sullivans defaulted on the note, the Rays pursued their rights in the personal property of the business through replevin and at the same time exercised the power of sale under their trust deed. The real estate was sold to the Rays for the bid price of $50,000. During the attempt to replevin the personal property, a priority dispute arose between the Rays and another secured party, the details of which are not important here.

## PROCEDURAL BACKGROUND

The Rays sued the Sullivans for a deficiency judgment in the district court for Box Butte County, Nebraska. Although the

exact amount of deficiency was not ascertainable at the time of filing, the Rays sued "to preserve their right to a deficiency under Neb. Rev. Stat. §76-1013 (Reissue 1990, as amended)." The petition alleged: "The exact deficiency will be ascertainable at trial based upon evidence adduced showing the fair market value of the real estate, the disposition of the remaining security and application of funds between the respective claimants, and the costs of sale and accrued interest."

After a series of answers with counterclaims to which the Rays demurred, the Sullivans filed a second amended answer and counterclaim containing three counts. The Rays again demurred, asserting that each of the three counts failed to state a cause of action. The district court entered an order sustaining the demurrers to the counterclaims and dismissed them without leave to amend. The Sullivans appealed this order to this court. We dismissed the appeal for lack of jurisdiction because the order was not a final order, and we remanded the matter to the district court. *Ray v. Sullivan*, 4 Neb. App. xxxii (case No. A-95-617, December 5, 1995).

The case was then set for trial. Both sides filed motions for summary judgment. Upon consideration of the evidence, the district court granted the Rays' motion for summary judgment. The district court awarded the Rays $33,465.92 plus interest in the amount of 16 percent per annum from and after April 19, 1996, until paid, and the Sullivans appealed again.

## ASSIGNMENTS OF ERROR

The Sullivans assert that the district court erred (1) "in sustaining [the Rays'] demurrers to [the Sullivans'] three count counterclaim, and dismissing same"; (2) in granting the Rays' motion for summary judgment; and (3) in denying the Sullivans' motion for summary judgment. But we do not reach these issues because the judgment has been paid.

## ANALYSIS

Prior to oral argument, the Rays filed a motion for summary dismissal on the ground that the Sullivans had lost their right to appeal by voluntarily paying the judgment. We overruled the request that we summarily rule on the matter. Before oral argu-

ment, we also advised the parties that the issue of the effect of payment of the judgment would be further considered.

The Rays contend in their memorandum brief in support of the motion for summary dismissal that the Sullivans, by voluntarily paying the $33,465.92 judgment plus interest on July 10, 1996, acquiesced in the district court judgment. The Rays, quoting *School Dist. No. 65 v. McQuiston*, 163 Neb. 246, 79 N.W.2d 413 (1956), allege that " '[a] defeated party's compliance with the judgment destroys his right to appeal where such compliance makes it impossible for the appellate court to grant him effective relief on the merits.' " The Sullivans, in their memorandum brief in opposition to the motion for summary dismissal, distinguish *McQuiston* on the basis that the payment of the judgment in that case was voluntary and not forced. The Sullivans contend that their payment was not voluntary in that

[a]fter the entry of the judgment, [the Rays] filed a Praecipe for Execution, and Execution was duly issued by the District Court and served upon [the Sullivans]. [The Sullivans] then applied for a Supersedeas Bond from the District Court, which was denied. [The Sullivans] then paid the judgment pursuant to the execution.

The Rays contend that the Sullivans failed to supersede and upon such failure paid the judgment.

The Nebraska Supreme Court in *Hormandl v. Lecher Constr. Co.*, 231 Neb. 355, 357, 436 N.W.2d 188, 190 (1989), held: "When a party voluntarily complies with the mandate of the trial court, satisfying the judgment, the appeal no longer presents an actual controversy, but an abstract question." As stated in *School Dist. No. 65 v. McQuiston*, 163 Neb. at 251, 79 N.W.2d at 416, " ' ' "[t]he practice of this court has been to refuse to entertain appeals when it is plain that nothing can be accomplished by the decision." ' ' " Accord *Matter of Manning*, 139 N.Y. 446, 34 N.E. 931 (1893). Thus, it is clear that the first question for us is whether the Sullivans voluntarily paid the judgment, because if so, the issues are moot and the appeal is to be dismissed. See *Hormandl v. Lecher Constr. Co., supra*.

We begin by considering the postjudgment occurrence. The Sullivans claim in their memorandum brief that they requested and were denied a supersedeas bond by the district

court, whereas the Rays argue in their memorandum brief that the Sullivans never tried to supersede. A party's brief may not expand the evidentiary record. *R-D Investment Co. v. Board of Equal. of Sarpy Cty.*, 247 Neb. 162, 525 N.W.2d 221 (1995). The transcript and bill of exceptions received by this court are silent concerning a request for a supersedeas bond, nor is there any record of denial of supersedeas. In reviewing the decision of a lower court, an appellate court considers only evidence included within the record. *State v. Price*, 252 Neb. 365, 562 N.W.2d 340 (1997). It is an appellant's duty to include in the bill of exceptions matter which is material to the issues presented for review. *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996). The record in this case requires that we conclude that there was no attempt by the Sullivans to supersede. In this connection, we note that the Sullivans allege, as we quoted from their memorandum brief, that after execution was issued they "applied for a supersedeas bond." The judgment was entered April 24, 1996, and the execution was not issued until June 3, more than 30 days after judgment. The applicable statute requires that the supersedeas bond be posted within 30 days of the judgment. See Neb. Rev. Stat. § 25-1916 (Reissue 1995). Thus, even if the Sullivans attempted to supersede after the execution, as asserted in their brief, they were out of time to supersede the judgment.

The Sullivans also allege that after the Rays filed a praecipe for execution, such execution was duly issued by the district court and served on the Sullivans. Yet an examination of the execution in the record reveals that although an execution was issued in the amount of $34,570.38 on June 3, 1996, it was never served. The return portion of the execution, certified by Sheriff Richard E. Bauer, indicates, "I hereby certify that on July 30, 1996, I am returning this writ unserved on the within named Gilbert L. Sullivan and Marcia M. Sullivan for the reason Plaintiff's attorney requested it be returned." Accordingly, we proceed on the basis that the execution was issued, but that it was not served upon the Sullivans. The district court's cash docket included in our transcript shows that the judgment, interest, and costs were fully paid into court on July 10, 1996, and in turn were paid out to the Rays on that date.

The issue of whether payment of a judgment was voluntary was considered in *Green v. Hall*, 43 Neb. 275, 61 N.W. 605 (1895). *Green* involved an appeal from a deficiency judgment for $3,578.10 and costs. Pursuant to execution and levy, the sheriff advertised the sale of 116 lots owned by the appealing judgment debtors. The sale was advertised for November 29, 1892. For reasons not revealed by the court's opinion, the sale never took place, and the execution was returned, "paid in full," on July 6, 1893. *Id.* at 276, 61 N.W. at 605. The judgment was discharged in three installment payments, the last of which was made June 19, 1893. All three of the payments were made while the sheriff "held the execution for the collection of the judgment in extinguishment of which they were made." *Id.* There was no request for supersedeas. The appellee moved to dismiss for the reason that the judgment appealed from had been voluntarily paid by one of the appellants.

In *Green*, the appellant judgment debtor who had paid the judgment filed an affidavit alleging that he made the payments to avoid a sale of the advertised lots and that the payments were not made voluntarily. The court found that there had been no supersedeas and that a sale of the lots would have vested title in the purchasers, which could not be affected by a reversal of the judgment. Thus, the fact that sale proceedings were under way, which could not be affected by the appeal, was plainly coercive. The court overruled the motion to dismiss and cited the principle that "if payment of a judgment appealed from is made under duress, the appeal should not be dismissed on motion of the appellee based solely on the fact of such payment." *Id.* at 277, 61 N.W. at 606. The court ruled that the circumstances surrounding the payment of the installments indicated that the payments were coerced, rather than voluntary. The central holding in *Green* is that a judgment debtor has a right to have an appeal determined, payment of judgment notwithstanding, when the payment "has been coerced by legal process during the [appeal's] pendency." *Id.*

The Nebraska Supreme Court faced this issue again in *Burke v. Dendinger*, 120 Neb. 594, 234 N.W. 405 (1931). *Burke* was an appeal from a judgment for damages in the amount of $1,000 in favor of the plaintiff, growing out of an assault. The defend-

ant failed to supersede, and an execution was issued to the sheriff, who, "armed with his writ, enforced payment by the judgment debtor." *Id.* at 594, 234 N.W. at 405. However, according to the court's opinion, this payment "was made by the judgment debtor to prevent seizure and sale of his property." *Id.* The plaintiff challenged the right of the defendant to appeal, based on the fact that the judgment appealed from had been fully satisfied. After reviewing the statutes in effect at the time and the *Green* case, the court determined, "[U]nder the facts in this case the defendant's right of appeal was in no manner prejudiced by the *coerced* payment made in the manner disclosed by the evidence." (Emphasis supplied.) 120 Neb. at 595, 234 N.W. at 405.

Unfortunately, beyond what we have recited, the *Burke* opinion gives no further facts surrounding the execution, such as what the sheriff actually did or how far the execution proceeded before payment. But the phrase "armed with his writ" suggests that the sheriff's role in "enforc[ing]" the judgment was not merely passive. From *Green* and *Burke*, it is clear that the rule in Nebraska is that payment of a judgment does not destroy the right to appeal when the record shows that the payment was coerced by legal process. It is important to emphasize the role that the contents of the record play in the application of the rule to a particular case. This is because the motivation or impetus for what people do or do not do during litigation is not always apparent or accurately discernible from looking only at the act or omission itself.

We acknowledge that a split of authority appears to exist, with some jurisdictions holding that payment prior to execution does not, of itself, surrender the right to appeal and others holding that payment prior to execution cuts off the right to appeal. See cases collected at Annot., 39 A.L.R.2d 153 (1955). There is also the "Kansas rule," which holds that an issued execution is not decisive in determining whether the judgment debtor's subsequent payment is voluntary so as to cut off the right to appeal, based on the rule that "anything which savors of acquiescence in a judgment cuts off the right of appeal." *Haberer v. Newman*, 219 Kan. 562, 566, 549 P.2d 975, 979 (1976). Although we see the *Green* decision as being fundamentally in accord with the Kansas rule, we point out that the Kansas courts have found that

when a judgment debtor elects to pay in response to an execution or garnishment, rather than stay the judgment or post supersedeas, the right to appellate review is cut off. See *Vap v. Diamond Oil Producers, Inc.*, 9 Kan. App. 2d 58, 671 P.2d 1126 (1983). It is noteworthy in relation to the above proposition that the *Vap* court wrote: "Kansas has recognized that payment of a judgment following the issuance of an execution can be a voluntary payment." *Id.* at 60, 671 P.2d at 1129, citing *Haberer v. Newman, supra.* The basis of the Kansas rule in *Vap* appears to be that under Kansas law, a stay of execution of a judgment via supersedeas can be granted by the trial court or by an appellate court without apparent time limitations. See Kan. Stat. Ann. § 60-2103(d) (1994). In contrast, our statute provides only a 30-day window in which to stay the enforcement of a judgment by posting supersedeas. § 25-1916.

But in Nebraska, the test is whether the payment is voluntary, which of necessity eliminates hard-and-fast rules like the one that payment after issuance of an execution is always involuntary. See cases collected at 39 A.L.R.2d, *supra* at 160 [§ 5][b]. Our rule requires a case-by-case examination of the facts. In this regard, we note that affidavits may be presented to an appellate court, apart from the trial court record, to establish whether a party has dealt with a judgment in a way which waives the right to appellate review. *Giese v. Giese*, 243 Neb. 60, 497 N.W.2d 369 (1993). The Sullivans presented no such affidavit to us, nor did the Rays. The purpose of our examination of the record and any such affidavits which might be filed is to determine what transpired after the judgment was entered, and why. We do so to determine whether the payment was voluntary or truly coerced by the legal process for collection of judgments.

In the instant case, the answer is rather straightforward because of the state of the record. The record does not affirmatively establish that the Sullivans were ever aware that execution had been issued by the district court. Because the record shows that the sheriff returned the execution unserved, a permissible inference is that the Sullivans did not know of the execution. Thus, given the contents of the record, we cannot find the coercive effect upon the Sullivans of the legal process for the col-

lection of judgments so as to conclude the payment was involuntary. The Sullivans may have been aware of the existence of the unserved execution from the "grapevine," their counsel, or a courtesy phone call from the sheriff, and they may have paid the judgment to avoid the unseemly process of a formal execution, levy, and sale. Or they may have filed the appeal as a "long shot" on the merits and paid the judgment on July 10, 1996, after a certificate of deposit matured by happenstance the day before, with the thought that they would stop the accumulation of interest and get their money back if they won the appeal—all without any knowledge of an issued but unserved execution. There are obviously other potential scenarios which one could imagine about what happened and why, but the record leaves us with only an unserved execution and a fully satisfied judgment during the pendency of the appeal. Given that the execution was not served, we believe the burden falls to the Sullivans to demonstrate, by affidavit, that their satisfaction of the judgment was not voluntary, but was instead the result of coercion by legal process. The Sullivans have not proved that their payment was involuntary, and the record before us does not carry their burden to prove that their payment was involuntary.

This is not to say, however, that an appealing judgment debtor who does not post a supersedeas bond thereby acquiesces in the judgment or forfeits the right to appeal. Some judgment debtors may lack the resources to post such a bond. But a judgment debtor who appeals and pays the judgment without coercion is in the position of a voluntary payee and "moots" his or her own case by the voluntary payment. On the record before us, the Sullivans have surrendered their right to appeal. In the final analysis, the end result is the logical corollary of the rule that one who *accepts* the benefits of a judgment also surrenders the right to appeal. See *Giese v. Giese, supra*. Here, the record forces us to conclude that although obviously not done because it was beneficial to the Sullivans, they accepted the judgment by voluntarily paying it.

APPEAL DISMISSED.