Hornish v. Peck.

HORNISH v. PECK.

1. **Appeal:** WAIVER OF: ISSUE OF EXECUTION. A party in whose favor a judgment is rendered, for an amount smaller than his demand, does not waive his right to appeal by causing execution to issue on the judgment.

2. **Principal and Agent:** AUTHORITY OF AGENT: FRAUDULENT REPRESENTATIONS. Evidence considered and held to establish a contract of agency to negotiate a sale of certain property, such as would bind the principal by the representations of the agent in relation to the property.

*Appeal from Lee Circuit Court.*

THURSDAY, MARCH 18.

IN November, 1876, the plaintiff commenced an action to recover of the defendant the sum of six hundred dollars upon a promissory note made by defendant, and payable to plaintiff's order.

The defendant answered on November 18, 1876. A de-

murrer to this answer was sustained. On the 29th day of November, 1876, the defendant filed his amended answer. A demurrer to this amended answer was sustained.

On the 12th day of June, 1877, the defendant filed his second amended answer and counter-claim. In this pleading it is averred, in substance, that said note was given without consideration, and was obtained by reason of fraud and misrepresentation practised upon the defendant by plaintiff in this: That plaintiff claimed to be the owner of seventy shares of stock, of $1,000 each, in the Iowa and North Pacific Construction Company, and that the same were of the value of $70,000, being full paid up stock, when in fact only about $8,000 or $10,000 had been paid on said shares, and that the representation that said stock was fully paid up was one of the inducements by which the defendant made and executed the note sued on, with others, to the plaintiff and other parties, to the amount of about $10,000; that prior to the time of the transfer of said stock to defendant, the said construction company had been engaged in the construction of a railroad between Newton and Monroe, known as the Iowa, Minnesota & North Pacific Railroad, in all of which, the plaintiff and one B. W. Davis were active agents and officers; that plaintiff, well knowing what had been done by said construction company towards building said road, and the amount of property that belonged to said construction company, and the amount of additional expense and material that would be necessary to complete the same, falsely and fraudulently represented to the defendant that work had been done on said road consisting of grading, bridging, piling, etc., the amount in value of about $90,000; that said construction company owned property and things ordinarily used in the construction of railroads of the value of $30,000, and also taxes and subsidies voted by certain townships in aid of said road, to the amount of $92,000, less $12,000 which had been paid; that said representations were false in this: that the value of the work

which had been done on said road did not exceed $10,000, and that the ties and bridge ties, and timbers and excavations were worthless, and the other property referred to above did not exist at the time of the sale to defendant, and instead of there being $80,000 of said subsidy taxes, there was not to exceed $40,000 of the same; that at the time of the purchase of said stock by defendant the plaintiff represented to defendant that it would only require $20,000 to complete said road from Newton to Monroe, which statement was false in this, that defendant and other persons interested with him have expended necessarily in so doing more than $54,982; that defendant was induced by said false representations to make said purchase of said shares of stock, and that knowledge of said facts, so far as they establish the false and fraudulent nature of plaintiff's representations, did not come to the defendant until long after said notes were made, and said stock transferred, and not until defendant had expended large amounts of money in the construction of said railroad.

It is averred that defendant has been damaged by said false and fraudulent representations in the sum of $13,993, which he set up as a cross-claim, and asked that the cause be transferred to the equity side of the court and consolidated with other claims, on which suits upon notes given by defendant for said stock had been brought, and that the causes be set down for hearing on written evidence in the form of depositions, and he prayed judgment against plaintiff for $17,993, and that plaintiff be compelled, by order, to bring in any of said notes that may be in his possession, and that the notes sued on, and all others in which plaintiff has any interest, be canceled and declared null and void.

The plaintiff replied to the answer and counter-claim by denying all fraud and fraudulent representations. An order was made transferring the cause to the equity side of the court, and that the trial be in equity, and that the evidence be taken in writing in the form of depositions.

A trial was had upon depositions taken and filed by the

respective parties.   The court found and decreed that there was a partial failure of consideration in the sale from plaintiff to defendant set out in the pleadings, to-wit:  "instead of the interest sold by plaintiff to defendant being worth the amount agreed to be paid, $5,000, it was, in fact, worth but $2,000, according to the terms of the purchase.  And the court finds $1,250 of the purchase money which defendant agreed to pay plaintiff has heretofore been paid, leaving a balance of $750, with ten per cent interest from November 1st, 1875, to this time, and said amount is all the balance now due on said purchase, and when said amount is paid the same shall operate to pay all the purchase money for said interest sold by plaintiff to defendant."

A judgment was rendered for the plaintiff for the amount thus found due, and a decree was entered canceling the other notes given by defendant to plaintiff as aforesaid.

Plaintiff appeals.

*McCrary, Hagerman & McCrary*, for appellant.

*Gillmore & Anderson* and *W. B. Collins*, for appellee.

ROTHROCK, J.—After the plaintiff had perfected an appeal and filed a transcript and abstract in this court, he caused an execution to issue from the court below upon the judgment in his favor.   This is made the ground of a motion by appellee to dismiss the appeal. It appears that the execution was levied upon a stock of goods and merchandise, which had been seized upon a chattel mortgage given to other parties for an amount greatly in excess of the value of the mortgaged property.   The levy of the execution was afterward released, and the execution returned.   Notice of garnishment was served on one Pond, the trustee named in the chattel mortgage.   No proceedings have been taken against Pond as garnishee, and the plaintiff admits that such proceedings would be unavailing, and offers to discharge the garnishee.   We think, under these circum-

1. APPEAL: waiver of: issue of execution.

stances, the plaintiff has not waived his right to prosecute the appeal, and that the motion to dismiss should be over-ruled. See *Dudman v. Earl*, 49 Iowa, 37.

II. The defendant incorporated in his answer and counter-claim a motion for a trial upon written evidence. An order was made by the court that the cause should be tried upon written evidence in the form of depositions, and it was so tried. It is, therefore, triable anew in this court.

III. We are not aware of any controverted proposition of law in the case. A large volume of testimony was taken upon the question of fraud in inducing the de-fendant to enter into the contract, and the want of consideration for the notes in controversy. We are required to determine from the evidence whether the allegations of the answer and counter-claim have been sustained by the proof. We cannot set out the evidence so as to demonstrate the correctness of our conclusions. To do so would require at least one hundred and twenty-five pages of our reports. We can but state the conclusions of fact at which we have arrived.

2. PRINCIPAL and agent: authority of agent: fraud-ulent repre-sentations.

Both parties reside at a considerable distance from the line of the railroad which has been constructed from Monroe to Newton. During the years 1872 and 1873, the construction company was engaged in prosecuting the work on the road, and continued up to the fall of 1873 when the work ceased. The stockholders in the construction company were, Hornish (the plaintiff), Albright, Davis, Farmer and McDowell. The work remained in this incomplete condition until the fall of 1875. In the meantime, Davis was the active member of the con-struction company. His efforts seem to have consisted in endeavoring to induce parties to buy out the stock and inter-est of Hornish, Albright and McDowell. Davis, with other parties, had an interview with the defendant at Des Moines, and there endeavored to induce the defendant to purchase. At this interview Davis represented that he had authority from Hornish to sell the interests of Hornish, Albright and

McDowell. Davis, at that interview, represented the prop-
erty of the construction company as being largely in excess
of what it actually was. This is clearly shown by the evi-
dence, and indeed we do not understand Davis to deny it in
his testimony. That Davis knew the representations to be
false, especially as to the amount of tax subsidies, the prop-
erty of the construction company, such as tools, ties, timbers,
etc., we think, is fairly established. He had been in charge
of the construction during the whole progress of the work,
and afterwards was the managing member of the company.
It is urged in argument by counsel for appellant that there
is not sufficient evidence to establish that Davis was the agent
of Hornish for the sale of his stock and interest in the con-
struction company. There is no direct evidence of such
agency; that is, it does not appear in evidence that Hornish,
by an express contract or direction, constituted Davis his
agent. But it does appear that Hornish was anxious to sell,
and that Davis endeavored to find a purchaser. A number
of letters written by Hornish and Davis to each other were
introduced in evidence, and we think they fairly establish the
agency of Davis. That defendant relied upon the representa-
tions as to the property, rights and interests of the construc-
tion company, we think is fairly established, and that he was
damaged by the contract does not seem to be controverted.
The court below found that there was a partial failure of con-
sideration for the notes, because the property of the construc-
tion company was misrepresented. It is urged that there was
no failure of consideration nor fraud, because Peck received
all he contracted for, which was an assignment of the shares
of stock held by Hornish, Albright and McDowell. In one
sense this is true, but if that which made the stock valuable,
that is, the property of the corporation, was misrepresented,
it is as clear a case of fraud as it would have been if the
defendant had been deceived as to the number of shares of
stock he contracted for.

We have not made an accounting of the difference in the

value of the property from what it was represented to be. That it would not be less than found by the court below is clearly shown by the evidence, and we are content to leave it as fixed by the learned Circuit Judge.

AFFIRMED.

### OPINION ON REHEARING.

BECK, J.—Upon petition of plaintiff a rehearing was granted in this case, and it has again been submitted to us upon the arguments of the counsel of the parties.

Counsel for plaintiff insist the conclusion reached in our former opinion, that Davis was the agent of Hornish, is not supported by the facts as disclosed by the record. They insist, correctly enough, that unless the relation of principal and agent be shown Hornish cannot be held bound by Davis' false representations.

We have carefully reconsidered the evidence upon this point of the case, and a majority of the court are satisfied that our conclusion is supported by the testimony. It is proper to say that some of us have grave doubts upon this point, and at least one member of the court would be better satisfied with a different result.

The testimony shows that Hornish was for a long time anxious to dispose of his interest in the construction company, which he subsequently sold to Peck, and had authorized Davis to negotiate its sale; indeed, the letters passing between them show that Hornish frequently directed and urged Davis in these negotiations and specified parties with whom he should negotiate, and the manner and terms of the negotiations in some instances. There is no formal delegation of authority as an agent in these letters, and it may be that neither party supposed that the relation of the principal and agent existed between them. But Davis undoubtedly was authorized and expected by Hornish to make negotiations; that is, propose and accept terms for the sale of his stock. Davis was the

managing man of the corporation; he was on the ground and felt, as did Hornish, the necessity of change in the membership of the corporation. Davis probably wanted to get Hornish out in order to get some one in his place who had more money than he. It was a sinking vessel. Hornish desired to get out and save all he could; Davis was doubtless willing to go too, but thought it better, if he did stay, to have some one take Hornish's place who had money. Davis, to accomplish his purpose, was willing to seek a customer for Hornish, who was entirely willing to have Davis' services as a "negotiator" in the business. As we have said, he did authorize Davis to make such negotiations. These negotiations consisted largely in representing what a good thing the construction company was, and what excellent prospects it had of making money.

Now if Davis was authorized by Hornish to make such negotiations, the relation between the parties of principal and agent exists. If Davis' authority was limited to negotiations, " talking up " a sale of Hornish's stock, he must be held bound by the representations made by his agent or " *negotiator*." The law will not permit Hornish to escape liability for the fraudulent representations of his mouth-piece, Davis, by denying his agency. This conclusion of law cannot, we think, be doubted.

Davis, Peck and others, met prior to the trade with Hornish. During the interview Davis declared he had authority to sell the stock of Hornish and others. It is insisted that Davis' agency cannot be established by his own declarations. True enough; but the evidence shows that Peck had reason to believe that Davis was Hornish's agent, and made the purchase in that belief. It is stated by witnesses present at the interview that Davis produced a letter showing his authority to negotiate for Hornish and others. Certain it is, as we have seen, he did have such authority from Hornish, who must be held bound by his representations.

We adhere to the conclusions announced in our first opinion.