No. 47,847

Rudy R. Haberer and Jean Haberer, *Appellees*, v. L. M. Newman, a/k/a Lawrence M. Newman; R. H. Newman, a/k/a Raymond H. Newman; Faith A. Newman; Jeane A. Newman, *Appellants*, and Don Legere, d/b/a Legere Auction and Realty Co., *Appellee*.

(549 P. 2d 975)

Opinion filed May 8, 1976.

*Brock R. Snyder*, of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *K. Gary Sebelius*, of the same firm, was with him on the brief for the appellants.

*Michael S. Holland*, of Russell, argued the cause and was on the brief for appellees Rudy R. Haberer and Jean Haberer; and *Norbert R. Dreiling*, of Dreiling, Bieker & Kelley, of Hays, argued the cause and was on the same brief for appellee Don Legere, d/b/a Legere Auction and Realty Company; and *Richard M. Driscoll*, of Russell, was with them on the brief.

The opinion of the court was delivered by

Owsley, J.: This is an appeal by defendants, Lawrence M. Newman and his son, Raymond H. Newman, from a judgment of the district court granting specific performance of an auction contract for the sale of real property. The principal dispute concerns the legal effect of an announcement made by the auctioneer, Don Legere, immediately preceding the falling of the hammer, that all creditors must be satisfied from the proceeds of the sale to make title marketable. Plaintiffs, Rudy R. and Jean Haberer, moved to dismiss the appeal because of the Newmans' compliance with the judgment of the trial court. We have concluded that acts of the Newmans following the entry of judgment savor of acquiescence and the appeal should be dismissed.

On or about March 28, 1972, Lawrence Newman telephoned Legere, a licensed auctioneer and real estate broker, to discuss hiring him to conduct an auction of some land owned by the Newmans. At a meeting later that day Raymond Newman ad-

vised Legere that he needed to sell land to pay his creditors. The tract of land to be sold consisted of 681 acres of grassland owned by the Newmans as tenants in common. In addition, the Newmans owned a 400-acre tract which, together with the aforementioned tract, was covered by a mortgage with Prudential Life Insurance Company of America. The total mortgage balance outstanding was $63,920.42. In conjunction with the real estate owned by the Newmans as tenants in common, the record discloses that Raymond Newman owned in his own name an additional 1,700 acres of land in Kansas, a 120-acre tract in Nebraska, some cattle, and other personal property.

After considerable discussion the parties entered into an auction employment contract authorizing Legere to conduct an auction sale of the 681-acre tract on their behalf. The contract expressly authorized Legere to do all things necessary to sell the property, including the right to advertise as a "genuine auction" and to "absolutely sell, without reservation."

Soon after entering into the contract Legere began distribution of handbills advertising the sale as a genuine public auction to be held on April 17, 1972, at the county courthouse at Osborne, Kansas. Among other things the advertisements provided that "[a]nnouncements made at auction shall take precedence." No other reservations of any kind were made in connection with the sale, except that the title be made marketable. Immediately prior to receiving opening bids on the day of the sale Legere announced to those present that the sale was to be a "genuine auction" and that the property was to be sold whether the price be high or low. The bidding proceeded competitively until it reached the Haberers' bid of $56,000. Unable to obtain a higher bid, Legere conferred with Lawrence Newman, who directed him to complete the sale at the price bid by the Haberers. At that point Legere made the following announcement:

". . . [I]f there be any creditors that cannot be satisfied with this amount, the title will not be marketable and, therefore, it could not be a sale. . . . All right, I have subject to the approval of everybody and confirmation and finding out that the title is marketable, sold to you, sir, for $56,000."

With that the auctioneer's hammer fell and the property was announced sold to Haberers.

In reliance upon the terms of the sale, Haberer immediately gave to Legere, as agent for the Newmans, his check for the sum

of $11,200, representing twenty percent of the purchase price. A few days later Legere received a letter from the Newmans revoking his authority in all matters pertaining to the sale of the 681-acre tract of land. Because of the Newmans' continued refusal to convey the property, the Haberers brought suit for specific performance of the contract of sale. In their answer, the Newmans alleged, *inter alia*, that the auction sale was subject to the approval of creditors and was not "without reserve." By way of cross-claim, naming Legere as a third party defendant, the Newmans alleged that any failure of performance on their part was due to misrepresentation, fraud, and collusion of Legere, who should be held responsible for any judgment rendered against them in this action.

During trial the court took judicial notice of the fact that it was possible for the Newmans to obtain marketable title to the real estate, despite their contention that Prudential Life Insurance Company would not agree to a partial release of the mortgage or a new mortgage covering the acreage not subject to the sale but included within the original mortgage. Based on this fact and other findings the trial court held that a valid contract of sale was entered into by the Newmans and the Haberers, for the purchase price of $56,000. The court further found the sale was a "genuine auction . . . without reservation" and it was not conditioned upon approval of creditors. The court held generally in favor of the Haberers, ordering the Newmans to specifically perform the terms of the contract of sale by obtaining marketable title to the property, delivering a general warranty deed to the clerk of the district court, and immediately vacating the property and placing the Haberers in possession. Legere was ordered to pay into the office of the clerk the sum of $11,200, representing the down payment made by the Haberers. The clerk was ordered to deliver the deed to the Haberers upon their payment of the balance of the purchase price. In addition, the cross-claim of the Newmans against Legere was denied and judgment was rendered in favor of Legere for his commission in the amount of $3,360, plus interest. The Newmans' timely motion for relief from judgment was denied and a notice of appeal to this court was filed.

On March 18, 1976, the Haberers filed a motion to dismiss the appeal. The Haberers contend the issues raised are moot, inasmuch as the Newmans have acquiesced in the trial court's judgment. In support of their motion, they claim that although the Newmans filed a posttrial motion for additional time in which to

file a supersedeas bond and to reconsider the amount of the bond, they subsequently withdrew their motion prior to a ruling thereon by the trial court. Thereafter, the Newmans obtained from Prudential Life Insurance Company a release from the mortgage covering the 681 acres sold to the Haberers at the auction. The Haberers refer the court to the records in the Osborne County Register of Deeds office, Book 91, page 146, for verification of the release of the mortgage. Furthermore, they state that the Newmans then delivered to them a general warranty deed conveying the aforementioned property. Upon receipt of the deed, they paid to the Newmans the balance of the purchase price for the property and filed the deed of record on May 1, 1975, which was recorded in Book A-53, page 205, in the Osborne County Register of Deeds office. The Haberers also allege the Newmans surrendered possession to them and paid Legere's commission for conducting the auction. They contend that by so doing the Newmans have complied with the judgment of the trial court.

In opposition to the motion for dismissal due to acquiescence, the Newmans argue they did not voluntarily surrender the real estate inasmuch as they were not financially able to secure the requisite bond and they would have been held in contempt of court if they had not complied with the judgment rendered. They deny they withdrew their motion to reduce the amount of the supersedeas bond, but claim the trial court ruled on the matter and refused to reduce the amount previously set. The record does not support the Newmans' claim. The journal entry filed by the trial court on October 14, 1974, specifically stated that the Newmans moved in open court and were granted leave to abandon and withdraw their motion for additional time in which to file the supersedeas bond and the motion to reconsider the amount of the bond. There is nothing in the record to indicate the trial court denied the Newmans' motion to reduce the amount of the bond.

The Newmans correctly point out, however, that they did not actually pay Legere's commission as alleged by the Haberers. The record discloses that Legere paid into the court the $11,200 down payment he received from the Haberers for the purchase of the property and that later, upon motion of Legere, the court ordered that an amount equal to his commission be paid to him for his services.

As a further indication of the involuntariness of their compliance with the judgment, the Newmans allege that five days after the

journal entry was filed, the Haberers filed a "Special Execution for Possession" instructing the sheriff to remove the Newmans. According to the Newmans, they immediately filed a motion to set aside the execution on the ground, among others, that pursuant to K. S. A. 60-262 (*a*) no execution shall issue upon a judgment until the expiration of ten days after its entry. The Newmans do not support their allegations with affidavits nor do they indicate the fate of the execution. Even if the execution were in effect at the time the Newmans complied with the judgment our decision would be the same.

As a general proposition, the question of whether payment or performance of a judgment cuts off the defeated party's right to appeal depends upon whether such payment or performance was voluntary. (*Gehring v. Goering*, 181 Kan. 994, 317 P. 2d 424; *Muckey v. Baehr*, 158 Kan. 19, 145 P. 2d 164.) Most courts agree that payment of a judgment following the issuance of an execution does not cut off the payor's right to appeal. Although the rule is recognized in an annotation appearing in 39 A. L. R. 2d, p. 160, the annotator also recognizes the rule is not supported in Kansas. The issuance of an execution in Kansas is not decisive in determining whether the judgment debtor's subsequent payment is voluntary so as to cut off his right to appeal. This is in accord with the rule stated in many decisions of this court that anything which savors of acquiescence in a judgment cuts off the right of appeal. (*Seaman Dist. Teachers' Ass'n v. Board of Education*, 217 Kan. 233, 535 P. 2d 889; *Barnes v. Carroll*, 207 Kan. 545, 485 P. 2d 1293; *Gehring v. Goering*, supra; *Hawkins v. Wilson*, 174 Kan. 602, 257 P. 2d 1110; *Newsome v. Anderson*, 164 Kan. 132, 187 P. 2d 495; *Sisk v. Edmonston*, 163 Kan. 394, 182 P. 2d 891; *Paulsen v. McCormack*, 133 Kan. 523, 1 P. 2d 259.)

In defense of the action for specific performance, the Newmans stressed the fact they could not provide marketable title since the proceeds of the sale were insufficient to pay the Prudential Life Insurance Company mortgage. The facts stated in the motion to dismiss disclosed a release of the mortgage was obtained. The release, together with a general warranty deed to the property, was delivered to the Haberers, and the Newmans accepted the balance of the purchase price. These facts were not denied by the Newmans in their memorandum in opposition to the motion. If the Newmans had continued to maintain the release was unobtainable, specific performance would have been thwarted. The

court cannot punish for contempt the failure of a party to perform an impossible act.

In *Muckey v. Baehr*, supra, we held the appellant acquiesced in the judgment of the trial court even though execution was in the hands of the sheriff at the time he paid the judgment, since the payment was made without protest and to the clerk of the court rather than the sheriff. Similarly, in *Sisk v. Edmonston*, supra, the assignee of a judgment rendered against the appellant brought an action to recover on the judgment and caused an attachment to be levied on the appellant's personal property. The trial court rendered judgment on the pleadings against the appellant and ordered that the attached property be sold. Following a sheriff's sale of the property appellant filed an appeal to this court. Thereafter, the appellant filed a document with the clerk of the district court reciting that the sheriff had sold his property and the proceeds had been deposited with the sheriff, and that the appellee's assignor had paid to the clerk of the court an amount to be applied toward satisfaction of the judgment. The appellant stated it was represented to him that upon such payment the appellee would release his impounded assets. The appellant argued the case should not be dismissed since he was unable to give bond to discharge the attachment or prevent the sale, and that he did not consent to the judgment in such manner as to waive any right to prosecute his appeal. In dismissing the appeal we held whether or not the appellant could give bond to discharge the attachment or provide a supersedeas bond, he had nonetheless satisfied the judgment and his right to appellate review was waived.

In *Comeaux v. West*, 78 Kan. 404, 97 Pac. 381, a judgment was obtained canceling a real estate purchase contract and ordering possession returned to the seller. A few days later the appellants surrendered possession of the premises pursuant to the trial court's decree. In holding that the appellant's compliance with the judgment of the court operated to waive any right of appeal, we said:

". . . The plaintiffs' motion to dismiss the proceeding in error because of the voluntary surrender of the possession and the compliance with the judgment must be allowed. The recovery of possession, because of non-compliance with the contract which was canceled, was the important thing in litigation, and when the defendants voluntarily surrendered possession they necessarily waived the right to prosecute error. The fact that the decree ordered restitution and that an execution for that purpose was authorized but had not been issued does not amount to duress nor avoid the effect of the waiver consequent upon the compliance with the judgment." (p. 405.)

Not unlike the situation in *Comeaux*, the Newmans complied with the judgment of the trial court by obtaining marketable title to the property, by delivering a general warranty deed to the Haberers, and by surrendering possession of the property. They do not deny they performed these acts, but claim they were done involuntarily under threat of being held in contempt of court. The record does not support their allegations. From the journal entry filed by the trial court it is clear that the Newmans voluntarily withdrew their motion to reconsider the amount of the supersedeas bond. Their unsubstantiated assertion of their financial inability to secure a bond in the amount fixed by the court is in conflict with the testimony establishing Raymond Newman's substantial real estate holdings. It was apparently because of these other assets of the Newmans that the trial court took judicial notice of the fact it was possible for them to obtain marketable title to the property. The fact the Newmans obtained marketable title to the property confirms the court's conclusion.

There is nothing in the record, nor were any affidavits filed, to support the Newmans' allegation that they surrendered the land under threat of legal process. Under these circumstances, we must conclude the Newmans' compliance with the judgment was voluntary. Having acquiesced in the judgment, the Newmans are foreclosed from exercising their right to appellate review. Since the appeal was brought from the judgment of the trial court decreeing specific performance, it follows that the entire appeal should be dismissed, including the appeal against Legere.

This leaves only the matter of the Newmans' motion to impose upon the appellees the costs of reproducing the record. The appellees' designation of additional portions of the record consists of 333 pages of verbatim question and answer testimony taken from the 364-page trial court transcript. No effort was made to abbreviate the record or exclude those portions of the transcript which were unnecessary to the appeal. In accordance with the punitive sanctions set forth in Rule 6 (*e*), the costs of the supplemental record are hereby assessed two-thirds against the Haberers and one-third against Legere.

The appeal is dismissed.

SCHROEDER, J., dissenting.