(230 P.3d 452)
No. 100,664

RIC ALMACK, d/b/a RIC ALMACK ESTATE SALES & APPRAISALS, *Appellant*, v. JIM STEELEY, a/k/a JAMES W. STEELEY, d/b/a STEELEY & ASSOCIATES, *Appellee*.

Opinion filed May 14, 2010.

*David C. Kirk*, of Overland Park, for appellant.

*Jim Steeley*, appellee pro se.

Before CAPLINGER, P.J., PIERRON and BUSER, JJ.

PIERRON, J.: Ric Almack, d/b/a Ric Almack Estate Sales & Appraisals, appeals the judgment of the district court granting Almack default judgment, as a sanction against Jim Steeley, d/b/a Steeley & Associates, and awarding Almack $5,717.50. The court affirmed a magistrate court's decision as a sanction for discovery violations but reduced the amount awarded by the magistrate court from nearly $25,000 to $5,717.50. Almack argues the district court erred in denying him an election of remedies, denying the full measure of contract damages, and failing to affirm the magistrate judge's award of attorney fees. We affirm the district court's judgment but do so as a consequence of Almack acquiescing in the judgment.

Almack is in the business of estate sales, buy-outs, liquidations, and appraisals. Steeley was engaged in the business of buying and selling used office equipment. In early February 2005, Almack pur-

chased the assets of the Japanese Consulate in Kansas City, Missouri. On February 10, 2005, Steeley signed an agreement to serve as broker for Almack of multiple office-related items purchased from the Japanese Consulate. The agreement included 12 electronic items (copiers, fax machine, shredders, and etc.) and provided:

"Packing and moving of these items is the responsibility of the broker to the sale location. If the items are not sold and returned the client is responsible for packing and moving the items at that time.

"Safekeeping and insurance of property is responsibility of bailee broker during the term of this contract. All property listed above, to be sold, is to be handled by broker. Client and broker must agree in writing for item to be sold at a price lower than that listed for each item. Fax confirmation is considered writing for this contract agreement. Broker will deduct 50% from the total proceeds for the sale(s)."

On February 10, 2006, Almack made a demand upon Steeley for an accounting of the proceeds of sale, for payment of 50% of the gross sales, and for return of the unsold equipment. On March 22, 2006, Almack filed a limited actions petition seeking judgment against Steeley based on breach of contract. The magistrate court later granted Almack's motion for leave to amend his petition. Almack was allowed to pick up eight of the items on September 7, 2006, and had 20 days to amend his petition to include claims for loss of value.

On September 19, 2006, Almack filed an amended petition alleging three causes of action: (1) breach of contract damages of expected payment of proceeds in the amount of $12,285; (2) conversion for the fair market value of the property, minus returned property, in the amount of $22,825; and (3) diminuation of value of the returned items in the amount of $1,745. Steeley filed an answer and counterclaim alleging that Almack had failed to pick up the equipment at Steeley's office, he was entitled to damages for the repair and storage of the equipment, and Almack had fraudulently misrepresented the quality of the equipment.

After Almack filed his original petition, he started discovery requests and subpoenas for Steeley's business records involving Steeley, his wife, and their business dealings. Steeley objected to

Almack's discovery efforts. Some of the requests and subpoenas were honored, others were declined.

On March 19, 2007, the magistrate court ordered Steeley, by journal entry dated April 16, 2007, to provide within 30 days an itemization of all deposits over $100 for all bank accounts owned by Steeley, his wife, or Steeley & Associates for the period of February 17, 2005, through April 13, 2006, and to provide all repair bills and evidence of diminished value of returned equipment for Steeley's counterclaim. The magistrate court also ordered both parties to make full disclosure of witnesses, expert witnesses, reports, and any evidence of efforts to sell the equipment. The court's order stated: "If the Court's Orders are not complied with, severe sanctions may be imposed."

Almack had previously filed a motion for default judgment on January 8, 2007, based on Steeley's failure to following the magistrate court's discovery orders and failure to participate in mediation. On May 9, 2007, Almack filed his fourth motion for order to compel production of documents and motion for sanctions. On June 18, 2007, the court held a hearing on Almack's motion but Steeley did not appear at the hearing, although he later acknowledged notification. By journal entry filed June 20, 2007, the court granted judgment on the pleadings as a sanction for Steeley's failure to comply with "the reasonable and necessary orders of the court regarding discovery." The court granted judgment in Almack's favor in the amount of $22,825 for the conversion claim, $1,745 for the diminuation of value claim, and $500 for attorney fees resulting from Almack's third motion to compel. The court indicated it served no purpose to award attorney fees for Almack's fourth motion to compel.

On June 25, 2007, Steeley filed a notice of appeal of the limited action decision to the regular civil docket of the district court. In the meantime, Almack obtained an order for Steeley to appear for a hearing in aid of execution on September 20, 2007. Steeley failed to appear at the hearing in aid. The magistrate court found Steeley to be in contempt and ordered him to serve 48 hours in jail unless he provided copies of his wife's bank statements for the past 90 days. The district court set the case for trial on January 7, 2008.

All parties appeared for a hearing on January 7, 2008. The initial discussion focused on the posture of the case because a trial on the merits had not occurred in limited actions and the only judgment in existence was for Steeley's failure to comply with discovery requests. The district court considered its review to be whether entry of judgment was the appropriate sanction for Steeley's failure to comply with discovery requests. The court heard argument on Steeley's failure to produce a completed witness list, failure to produce information related to cash deposits in bank accounts, and failure to produce evidence of purchase parts, invoices, expenses, storage, and moving fees in accordance with the magistrate's motion to compel.

The district court ruled from the bench on January 7, 2008, that the magistrate court's sanction of judgment in favor of Almack was an appropriate response to Steeley's failure to comply with discovery. However, the district court disagreed with the amount of the judgment. The court concluded there was an admitted written agreement for a bailment and a 50% commission on anything sold. The court found that when Almack filed his petition in limited actions, the property had a value on March 20, 2006, of $12,285. This amount, $12,285, was an estimation by Almack of a reduced value of 50% from the date the items had been put on consignment with Steeley on February 10, 2005.

In establishing a new judgment amount, the district court used the current value, as claimed by Almack, of the four items that were not returned to Almack for a total of $10,190. Under the bailment contract, Almack was entitled to 50% commission, resulting in a judgment value of $5,095. The court also concluded that Almack was entitled to judgment under his diminution of value claim (count III - $1,745). The court subtracted the value of the converted typewriter from the diminution value and, after determining 50% per the bailment, this resulted in an additional judgment of $622.50. The total judgment entered by the court was $5,717.50.

There was no journal entry filed solely for the proceedings on January 7, 2008, until much later—June 12, 2008. On January 22, 2008, Steeley filed a motion for reconsideration and/or motion to

alter or amend the order of judgment. On April 9, 2008, the district court held a hearing on Steeley's motion for reconsideration. On May 9, 2008, the court entered its written judgment formalizing the $5,717.50 judgment from January 7, 2008, and also denying the motion for reconsideration.

Almack filed a notice of appeal on May 14, 2008. Steeley filed a cross-appeal on June 30, 2008. Almack filed a motion to dismiss Steeley's cross-appeal as untimely. This court granted leave for Steeley to file his cross-appeal. Other necessary procedural facts will be supplied in the discussion below.

An issue not raised by Steeley, who appears pro se, is the issue of Almack's acquiescence in the district court's judgment. We believe this is a jurisdictional issue which we may raise *sua sponte*. This court issued a show cause order asking for the positions of the parties on this issue. We now proceed to meet the issue.

Almack has clearly taken action on his judgment from the district court. The question is whether those actions constitute acquiescence and necessitate a dismissal of this appeal. We believe they do.

On January 7, 2008, the district court rendered its ruling from the bench for a $5,717.50 judgment in favor of Almack. On January 22, 2008, Steeley filed his motion for reconsideration and/or motion to alter or amend order of judgment. Yet even without a written judgment, on February 8, 2008, Almack obtained an order signed by the court for Steeley to appear for a hearing in aid of execution. Prior to appearing at the March 27, 2008, hearing in aid, Steeley filed an objection on March 24, 2008. On April 9, 2008, the court held a hearing on Steeley's motion for reconsideration. As previously stated, on May 9, 2008, the court entered its written judgment formalizing its $5,717.50 judgment from January 7, 2008. On June 12, 2008, the court entered a journal entry specifically for the January 7, 2008, judgment.

On May 13, 2008, Almack filed an application for examination of Steeley in aid of execution. On May 14, 2008, Almack filed a notice of appeal. The district court granted an order for hearing in aid of execution for July 9, 2008. On May 19, 2008, Steeley filed a motion for stay of execution pending disposition of plaintiff's ap-

peal. On May 28, 2008, Almack filed a motion to strike Steeley's motion to stay arguing Steeley's only remedy was to file a supersedeas bond. He also requested sanctions against Steeley for filing the motion for stay.

On June 26, 2008, the district court heard argument on Steeley's motion to stay. The issue of acquiescence was raised *sua sponte* by the court but not substantively addressed by either party. Initially, the court stated that even if a case is docketed on appeal, unless the judgment debtor files a supersedeas bond, there is not any stay of the collection proceedings. Almack argued this case was not an execution sale, it was a stay of a hearing in aid of execution, and he was entitled to pursue collection efforts unless and until Steeley posted a supersedeas bond. The court pointed out that Steeley was not the appealing party and he did not have to post a supersedeas bond. Almack responded that he might have to post a bond to stay execution on the judgment. The following colloquy occurred:

"THE COURT: The question for the appellate court may be whether or not you, by your collection actions, are acquiescing in the judgment that you are appealing.

"MR. KIRK: And I'm willing to address it.

"THE COURT: And that is a different issue for the appellate court.

"MR. KIRK: An aid in execution is not an execution. I'm looking for assets that I can actually - - .

"MR. STEELEY: Your Honor, execution of proceedings. It's the same thing.

"THE COURT: That's up to the appellate court. It may be that he acquiesces. That's not for me to address."

The district court denied Steeley's motion to stay the hearing in aid proceedings. On June 27, 2008, the court entered its written order denying the stay and also denying Almack's motion to strike and motion for sanctions. On June 30, 2008, Almack filed a motion for change of judge.

On June 30, 2008, Steeley also filed a notice of cross-appeal from the judgment entered on June 12 [*sic*] and all previous rulings. On July 8, 2008, Steeley filed a motion to continue the hearing in aid. On July 9, 2008, Almack filed a request for citation of contempt against Steeley for failing to appear. The order was granted by the district court. As stated earlier, neither Almack nor Steeley raised

the issue of acquiescence in this appeal. Further, Steeley did not file a cross-appellant's brief. Although acquiescence has not been alleged on appeal, we can still address the issue.

Acquiescence in the lower court's judgment by an appealing party raises a jurisdictional issue. See *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 497-98, 866 P.2d 1044 (1994) ("where a party is found to have acquiesced in the judgment of a trial court, appellate jurisdiction is lacking and the party's appeal must be dismissed"); *First Nat'l Bank in Wichita v. Fink*, 241 Kan. 321, 736 P.2d 909 (1987); *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 137, 38 P.3d 757 (2002). Jurisdictional issues can be raised by the appellate courts at any time. *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008) (an appellate court has a duty to question jurisdiction on its own initiative).

Acquiescence in a judgment, which cuts off the right of appellate review, occurs when a party voluntarily complies with the judgment by assuming the burdens or accepting the benefits of the judgment contested on appeal. *Younger v. Mitchell*, 245 Kan. 204, 206-07, 777 P.2d 789 (1989). The doctrine of acquiescence is based on the inconsistency between accepting some benefit or burden from a judgment while appealing the judgment itself. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, Syl. ¶ 6, 597 P.2d 1080 (1979). Acquiescence occurs when a party voluntarily complies with all or part of a judgment. See *Varner*, 254 Kan. at 494-98 (holding that an insurer's partial payment of the judgment constituted acquiescence). The test for acquiescence is whether the position taken by the party on appeal is inconsistent with the judgment. *Layne Christensen Co.*, 30 Kan. App. 2d at 138.

We have searched Kansas jurisprudence for cases involving a judgment creditor's acquiescence in a district court's judgment. In turn, we have discovered a great amount of authority on a judgment debtor's acquiescence in the district court's judgment. See *Huet-Vaughn v. Board of Healing Arts*, 267 Kan. 144, 150, 978 P.2d 896 (1999) (court dismissed appeal on grounds that, by paying a $5,000 fine imposed by the Kansas Board of Healing Arts, Huet-Vaughn had acquiesced to the KBHA's judgment that a military court martial conviction was comparable to a Kansas felony conviction); *Tice*

*v. Ebeling*, 238 Kan. 704, 713, 715 P.2d 397 (1986); *Cohen v. Dresie*, 174 Kan. 391, 394, 256 P.2d 845 (1953); *Harmon v. James*, 146 Kan. 205, 207-08, 69 P.2d 690 (1937); see also *Vap v. Diamond Oil Producers, Inc.*, 9 Kan. App. 2d 58, Syl. ¶ 3, 671 P.2d 1126 (1983) (Defendant acquiesced in judgment by allowing bank account to be garnished without filing a stay of execution.); *Muckey v. Baehr*, 158 Kan. 19, 145 P.2d 164 (1944) (Even though execution was in hands of the sheriff at the time the judgment was paid, defendant acquiesced in judgment because he failed to protest to the clerk of the court.).

We have found several noteworthy cases for our discussion of the issue on the judgment creditor side of the equation. In *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, Syl. ¶ 2, 206 P.3d 1 (2009), the court held: "In a case in which a party was awarded money in an arbitration and accepted payment of the arbitration award while appealing the propriety of arbitration, that party has acquiesced in the judgment and may not seek to have the arbitration award set aside."

In *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 136 P.3d 457 (2006), the court held that in a foreclosure action, a party's acceptance of redemption funds was not voluntary and therefore did not amount to acquiescence in the judgment. The court applied a "protective measure" exception to the rule of acquiescence:

"[T]he [appellants'] acceptance of the redemption funds was a protective measure under *Bank IV Wichita v. Plein*, 250 Kan. 701, 709, 830 P.2d 29 (1992). A *Plein* protective measure is taken in defense of and to protect a party's rights while an appeal is pending. [Citation omitted.]

"We agree with the Court of Appeals that application of the protective measure exception is appropriate on this particular set of facts. Had the [appellants] refused to accept the funds, they would have had to pay unnecessary interest on the loan they took to finance their purchase of the property. This hardship put the [appellants'] action well within the protective measure exception, and their acquiescence does not bar their appeal of the district court's judgment." 281 Kan. at 1271-72.

*Hemphill* and *Pastine* are indicative of the view that a party's acceptance of payment on a judgment or pursuit of satisfaction measures that actually result in monetary or tangible benefit to the creditor constitutes acquiescence and thus eliminates the right of

appeal. Generally, "benefits must actually be received by an appellant in order to waive the right of appeal; an unsuccessful attempt to collect a judgment does not relinquish the right of appeal because no fruits of the judgment have been accepted." 5 Am. Jur. 2d, Appellate Review §587, p. 344.

In *Robert L. Wheeler, Inc. v. Scott*, 818 P.2d 475 (Okla. 1991), the court addressed this issue head on:

"The issue is whether an attempt by an appellant to execute on the judgment from which he appealed results in a waiver of the appeal under the 'acceptance of benefits ' doctrine, even though the appellant received nothing from the attempted execution. The issue before us is one of first impression. The authority on this issue is meager." 818 P.2d at 478.

The *Wheeler* court held that because there was nothing in the record to show that Wheeler accepted any of the benefits of his judgment, the motion to dismiss his appeal based on acquiescence was denied. The *Wheeler* court cited the following general principles:

"The authority which exists supports a rule that benefits must actually be received by an appellant in order to waive his right to an appeal.[3] Oklahoma case law recognizes similar principles. In *Bras v. Gibson*, 529 P.2d 982, 983-984 (Okla.1974), this Court held that a party who accepts the benefits of the part of the judgment favorable to him waives the right to appeal the portion that is unfavorable. The Court explained:

"Bras needed only to appeal the trial court's actions to protect his interest. His act in cashing the voucher was voluntary and for his benefit. That act was not done in defense of and to protect his rights. As to the trial court's orders, Bras could do nothing more than object and appeal. As to the voucher, Bras could accept or refuse. This was his choice. [Emphasis added.]"

"3. The Supreme Court of Iowa held that a plaintiff who appealed the judgment granted to him had not waived his right to prosecute the appeal, even though he had attempted to execute on the judgment but received nothing. *Hornish v. Peck*, 53 Iowa 157, 1 N.W. 641, 644 (1879), *aff'd. on reh.* 53 Iowa 157, 4 N.W. 898 (1880). In *McDaniel Gift Shop, Inc. v. Balfe*, 179 So.2d 588 (Fla. App. 1965), the court held that the acceptance-of-benefits doctrine does not apply where the appealing party does not actually receive any of the benefits of the judgment. The court reasoned that a purpose of a judgment creditor in securing and delivering a writ of execution to the sheriff is frequently to cause the judgment debtor to post a supersedeas bond to protect the judgment creditor pending the appeal. The court stated that there was nothing irregular in such a tactic.

"With similar reasoning, courts in three other states have held that recording a judgment was not "acceptance of benefits." *Menges v. Robinson*, 132 Cal. App. 647, 23 P.2d 526, 528 (Cal. Dist. Ct. App. 1933); *Kittredge v. Grau*, 158 La. 154, 103 So. 723, 724 (1925); *Ellis v. Scarborough*, 279 S.W. 857, 858 (Tx. Civ. App.1926). The California and Texas cases gave as a rationale that the judgment creditor records his judgment simply as a precaution to provide some security for the satisfaction of the judgment should it be affirmed on appeal." 818 P.2d at 478.

We believe Kansas currently falls in line with the minority of jurisdictions that have adopted a rule that prevents an appeal if the party takes *any* action inconsistent with the right of review—successful or not. These jurisdictions treat such inconsistent behavior as a tacit acceptance of the benefits of the judgment. See, *e.g., J & F Car Care Serv., Inc. v. Russell Corporation*, 166 Ga. App. 888, 305 S.E.2d 504 (1983) (" If a judgment is rendered in favor of a litigant which he thinks is too small, he may either appeal and test such question or he may suppress any dissatisfaction and collect the judgment. He cannot do both. *Stallings v. Shell Petroleum Corp.*, 54 Ga. App. 359, 361[2], 188 S.E. 50; *Owens v. Read Phosphate Co.*, 115 Ga. 768, 42 S.E. 62; *Coley v. Coley*, 128 Ga. 654, 655[1], 58 S.E. 205."); *Allen v. Allen*, 198 Ga. 267, 31 S.E.2d 481 (1944) (appointment of receiver waived right of appeal).

Several Kansas cases bring us in line with this minority view. First, we distinguish cases where the actions of the acquiescing party were done involuntarily. Here, Almack acted voluntarily. In *Harsch v. Miller*, 288 Kan. 280, 200 P.3d 467 (2009), the appellants were ordered by the district court to proceed with trial despite their appeal of the district court's denial of their motion to stay. The *Harsch* court rejected the appellants' claim of acquiescence and found the district court did not abuse its discretion in denying the motion to stay and ordered the jury trial to proceed. 288 Kan. at 292; Compare *Haberer v. Newman*, 219 Kan. 562, Syl., 568, 549 P.2d 975 (1976) ("In an appeal from a judgment of a district court granting specific performance of a contract for the sale of real property, the acts of the appellants following entry of the judgment *savor of acquiescence* and the appeal is dismissed. [Emphasis added.]").

Although perhaps harsh in their impact, the cases appear to be controlling.

In *In re Marriage of Zimmerman*, No. 96,466, unpublished opinion filed July 3, 2008, the district court divided property in a divorce action. The husband appealed the decision but also filed a motion in the district court asking that the court compel the wife to execute quitclaim deeds, which she had been ordered to do in the divorce decree, to the real estate that was awarded to him. The district court granted the motion to compel. The *Zimmerman* court held that the husband had voluntarily accepted the benefits of the divorce decree by filing the motion to compel and thereby acquiesced in the judgment.

In the judgment creditor situation presently before the court, we rely heavily on *McDaniel v. Jones*, 235 Kan. 93, 95, 679 P.2d 682 (1984). McDaniel and Jones entered into an arrangement in the 1960s that transferred property owned by Jones to McDaniel, with Jones retaining possession and responsibility to make all payments on the existing mortgage, along with tax and insurance payments. After an agreement between McDaniel and Jones—that the district court later ruled was an equitable mortgage—became controverted, McDaniel filed a quiet title action. The court ruled fee title belonged to Jones, subject to liens for monies expended by McDaniel and the United States' tax liens that were subordinate to McDaniel's lien.

Jones appealed from all adverse rulings. McDaniel appealed the failure to find that he had fee simple title. The United States appealed the subordinate priority assigned its lien. After judgment, McDaniel sought a foreclosure sale of the property. Jones filed an application to stay the sale pending the appeal. The United States opposed Jones' application. The district court denied Jones' request, and the sale was consummated. Jones fought the confirmation of the sale, but the court approved it. Jones then redeemed the property. The court impounded the proceeds pending the outcome of the appeal.

Jones asserted the action by McDaniel in pursuing the sale of the property, the action by the United States in opposing the stay of the sale proceeding, and both parties' opposition to the effort by Jones to have the court deny the confirmation was acquiescence. The Kansas Supreme Court ruled that McDaniel's action in pur-

suing the sale was an implied recognition of and acquiescence in the trial court's finding of an equitable mortgage. 235 Kan. at 102. McDaniel's right to appeal was therefore cut off. 235 Kan. at 103.

The United States, however, only contested the priority of liens assigned by the district court. The *McDaniel* court felt this was a distinct and severable part of the judgment "involv[ing] only the respective rights of the United States and [McDaniel]." 235 Kan. at 104. The result on appeal on the issue of priority of liens would affect in no way the right to foreclose on the property to satisfy the judgment in favor of McDaniel or the United States. The appeal only determined who would get the proceeds of the sale. 235 Kan. at 104.

The Kansas Supreme Court has used the principles and language in *McDaniel* to state the following, especially telling in the present case where a judgment creditor initiates collection proceedings before and during an appeal of a judgment: "As a general rule, anything which savors of acquiescence in a judgment cuts off the right of appellate review. [Citations omitted.] The gist of acquiescence sufficient to cut off a right to appeal is voluntary compliance with the judgment. *McDaniel v. Jones*, 235 Kan. 93, 102, 679 P.2d 682 (1984)." *Tice v. Ebling*, 238 Kan. 704, 713, 715 P.2d 397 (1986). We acknowledge that several courts have discussed not road-blocking a judgment creditor's collection efforts and allowing the creditor the ability to force a judgment creditor into posting a supersedeas bond which in turn protects the creditor on appeal.

Almack's actions in this case *savor* of acquiescence. He has accepted the benefits of the judgment by commencing a hearing in aid of execution proceeding. This is not a case about the completion of a sale or accepting payments on the judgment or even protective measures necessary to preserve a judgment. Instead, this case involves the voluntary actions of a judgment holder to enforce a judgment. See, *e.g., Troyer v. Gilliland*, 247 Kan. 479, 799 P.2d 501 (1990) (participant who was awarded money judgment acquiesced in judgment by securing order for distribution of funds paid into trial court).

Having acquiesced in the judgment, Almack's appeal is dismissed.

* * *

CAPLINGER, J., dissenting: I respectfully disagree with the majority's conclusion that Kansas follows the minority rule requiring a finding of acquiescence when a party takes *any* action inconsistent with the right of review. Instead, I would hold that Kansas cases require receipt of a tangible benefit before finding acquiescence to a judgment, and because Almack received no tangible benefit here, he did not acquiesce in the judgment.

The primary Kansas case cited by the majority in support of its conclusion that Kansas follows the minority rule is *Harsch v. Miller*, 288 Kan. 280, 200 P.3d 467 (2009). However, the issue in that case was not whether an action inconsistent with appeal results in acquiescence. Rather, in *Harsch* the appellants were proceeding simultaneously in two cases—one in state court appealing the damages they were awarded in an eminent domain proceeding and the other in federal court challenging the constitutionality of the eminent domain statute. The appellants attempted to stay the state court case pending resolution of the federal case, and the district court denied the motion. The issue on appeal was whether the district court abused its discretion in denying the stay—not whether the appellants acquiesced in the judgment and were precluded from appealing. 288 Kan. at 281-82, 292.

The appellants argued the court abused its discretion because *if* they would have proceeded to trial after the denial of their motion to stay, it would have constituted acquiescence. Our Supreme Court disagreed, concluding the district court did not abuse its discretion to deny a stay in state court when a separate, but unique, action was proceeding in federal court. The court aptly reasoned that the Harsches were not voluntarily complying with the denial of the stay and thus could not have been held to acquiesce. 288 Kan. at 292. The court did not suggest, however, that any time a party takes any voluntary action inconsistent with its appeal rights, it has acquiesced in the judgment.

The majority also cites *In re Marriage of Zimmerman*, No. 96,466, unpublished opinion filed July 3, 2008, and suggests that in that case, the husband's motion to compel his ex-wife to execute a quitclaim deed to properties awarded to the husband barred his subsequent appeal of the property division. However, contrary to the majority's suggestion, *Zimmerman* did not hold that the husband acquiesced to the judgment simply by filing a motion to compel. Instead, the district court granted the husband's motion to compel and his wife was forced to execute a quitclaim deed to property awarded to the husband. Further, the husband even sold one of the properties. Again, in this case the appealing party actually received a benefit from his inconsistent actions. Thus, *Zimmerman* does not support the majority's suggestion that a party acquiesces to a judgment simply by taking any action inconsistent with appeal rights.

The majority also relies upon *McDaniel v. Jones*, 235 Kan. 93, 95, 679 P.2d 682 (1984). In summarizing the holding of this case, the majority indicates the court there held that McDaniel, who had been awarded an equitable mortgage, acquiesced in the judgment "in pursuing the sale" of the property. 43 Kan. App. 2nd at 774-75. However, the majority's summary of the holding omits important facts and misstates the court's holding. McDaniel did not simply pursue the sale of the property, he successfully forced the sale. The court held: "In seeking *and* obtaining the execution of the judgment by causing the property to be foreclosed *and* sold, the plaintiffs have impliedly recognized the validity of the trial court's judgment granting them an equitable mortgage on the premises and the right to foreclose to satisfy the mortgage." (Emphasis added.) 235 Kan. at 102. As in the other cases cited by the majority, the party that acquiesced in the judgment received a tangible benefit. Thus, *McDaniel* also is inconsistent with the majority's conclusion that a party acquiesces in a judgment when it takes *any* voluntary action inconsistent with its appeal rights.

Finally, the majority relies heavily upon the concept that "anything that savors of acquiescence in a judgment" cuts off the right to appellate review as stated in *Tice v. Ebeling*, 238 Kan. 704, 713, 715 P.2d 397 (1986). 43 Kan. App. 2d at 775. But *Tice* did not

address the issue of whether a party waives the right to appeal by acquiescing in a judgment. Instead, the court used the phrase "savor of acquiescence" to support its determination that the appellant's failure to object to an evidentiary ruling resulted in acquiescence to the ruling and waiver of the right to appeal that particular issue.

In conclusion, I would find that Kansas follows the majority approach and requires that a party must do more than simply take voluntary action inconsistent with appeal rights in order to acquiesce to a judgment. Rather, a party acquiesces in a judgment only if it received a tangible benefit as a result of its inconsistent actions. Thus, I would reach the merits of the issues raised by Almack in this appeal.