NOT DESIGNATED FOR PUBLICATION

No. 118,042

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN D. SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion on remand filed May 15, 2020. Sentence vacated and case remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., POWELL, J., and MCANANY, S.J.

MALONE, J.: In this direct appeal from resentencing on remand, Shawn D. Smith challenges the person classification for criminal history purposes of his 1993 South Carolina burglary conviction. This case returns to the Court of Appeals on remand from a Kansas Supreme Court order with directions "remand[ing] for reconsideration in light of *State v. Murdock*, 309 Kan. 585, 439 P.3d 307 (2019) [(*Murdock II*)], *State v. Weber*, 309 Kan. 1203, 442 P.3d 1044 (2019), and *State v. Newton*, 309 Kan. 1070, 442 P.3d 489 (2019)." *State v. Smith*, No. 118,042, 2019 WL 7763406 (order dated December 27, 2019). For the reasons stated in this opinion, we vacate Smith's current sentence and

1

remand for resentencing with directions to classify Smith's 1993 South Carolina burglary conviction as a nonperson felony.

FACTUAL AND PROCEDURAL BACKGROUND

We begin by setting forth Smith's long and complicated history with the Kansas court system. This factual summary will include a discussion of several Kansas Supreme Court decisions which, according to Smith, affect the legality of his current sentence.

"In November 2006, a [Sedgwick County] jury found Smith guilty of aggravated kidnapping. The presentence investigation (PSI) report calculated Smith's criminal history score as 'C,' due in part to a 1993 South Carolina conviction identified as 'Burglary of Dwelling 2nd Degree' and classified as an adult person felony. Although Smith objected to his PSI report on other grounds, he did not object to the classification of the South Carolina burglary conviction. On December 19, 2006, the district court sentenced Smith to 272 months' imprisonment with 36 months' postrelease supervision.

"Smith timely pursued a direct appeal. Relevant to his criminal history, Smith argued only that the district court violated his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his prior convictions to increase his sentence without requiring the State to prove them beyond a reasonable doubt to a jury. *State v. Smith*, No. 97,951, 2008 WL 4416029, at *7-8 (Kan. App. 2008) (unpublished opinion), *rev. denied* 288 Kan. 835 (2009). This court affirmed Smith's conviction and sentence, and our Supreme Court denied Smith's petition for review [in 2009]." *State v. Smith*, No. 113,297, 2016 WL 1391767, at *1 (Kan. App. 2016) (unpublished opinion).

On May 2, 2014, the Kansas Supreme Court issued its opinion in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014) (*Murdock I*), *modified by Supreme Court order* September 19, 2014, *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015). *Murdock I* examined the general statutory provision that directed how to classify prior out-of-state convictions for criminal history purposes. "The *Murdock* [*I*] court held that when calculating a defendant's criminal history that includes out-of-state convictions

2

committed prior to the enactment of the Kansas Sentencing Guidelines Act (KSGA), the out-of-state convictions must be classified as nonperson offenses." *Smith*, 2016 WL 1391767, at *1 (citing *Murdock I*, 299 Kan. 312, Syl. ¶ 5). The KSGA was enacted on July 1, 1993. *Keel*, 302 Kan. at 566.

The month after *Murdock I*, Smith filed in Sedgwick County a pro se motion to correct illegal sentence, arguing that his sentence in the Sedgwick County case was illegal because under *Murdock I*, his 1993 South Carolina burglary conviction should have been classified as a nonperson felony for criminal history purposes. *Smith*, 2016 WL 1391767, at *1. In November 2014, Smith's court-appointed attorney filed a motion to correct illegal sentence that made the same argument.

The State responded, arguing that res judicata barred the application of *Murdock I* and that courts should not apply *Murdock I* retroactively to already final cases because (1) it created a new rule of law, (2) retroactive application would not serve the principles underlying *Murdock I*, and (3) retroactive application would cause the State substantial hardship. 2016 WL 1391767, at *2. In December 2014, the district court denied Smith's motions and "'adopt[ed] the State's response as its findings of fact and conclusions of law.'" 2016 WL 1391767, at *2. Smith timely appealed the denial of his motion to correct illegal sentence; that appeal is hereinafter referred to as the Sedgwick County appeal.

*Smith's Leavenworth County case*

In April 2015, Smith pled no contest in Leavenworth County District Court to one count of attempted trafficking in contraband in a correctional institution. *State v. Smith*, No. 115,830, 2017 WL 3113188, at *1 (Kan. App. 2017) (unpublished opinion).

On May 22, 2015, while Smith's Sedgwick County appeal was pending in this court and he was awaiting sentencing in the Leavenworth County case, the Kansas

Supreme Court issued its opinion in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015) (*Dickey I*), which involved the person or nonperson classification of a pre-KSGA Kansas burglary conviction. The *Dickey I* court held that an appellant may raise an illegal sentence claim for the first time on appeal, including a challenge to "the classification of his or her prior convictions and/or the resulting criminal history score used to sentence him or her under the [KSGA]." 301 Kan. 1018, Syl. ¶ 3. It also held that in light of K.S.A. 2014 Supp. 21-6811(d), which sets forth how to classify prior burglary convictions for criminal history purposes, "the legal reasoning and holding of [*Murdock I*] is inapplicable to determining whether a prior burglary conviction or adjudication should be classified as a person or nonperson offense." *Dickey I*, 301 Kan. 1018, Syl. ¶ 6.

K.S.A. 2014 Supp. 21-6811(d) states that prior burglary convictions or adjudications are classified for criminal history purposes as:  (1) a person felony if the prior burglary conviction or adjudication involved a dwelling, or (2) a nonperson felony if the prior burglary conviction or adjudication did not involve a dwelling. The *Dickey I* court held that determining whether a dwelling was involved must comply with the constitutional principles against judicial fact-finding in the context of sentencing as explained by the United States Supreme Court in *Descamps v. United States*, 570 U.S. 254, 186 L. Ed. 2d 438, 133 S. Ct. 2276 (2013). *Dickey I*, 301 Kan. at 1035-40.

Under *Descamps* and *Dickey I*, when classifying a prior burglary conviction as person or nonperson, the threshold question is whether the burglary statute that defined the prior crime of conviction or adjudication contained a single set of elements or multiple sets of elements. If it contained a single set of elements, the sentencing court examines only those elements—an approach called "the categorical approach"—and the prior burglary is classified as a person crime only if those elements require the involvement of a dwelling. If the prior statute was divisible, the question becomes whether any of the alternatives under which the defendant could have been convicted required the involvement of a dwelling. If yes, a sentencing court may employ the

4

"modified categorical approach" and "examine a limited class of documents"—
"includ[ing] charging documents, plea agreements, jury instructions, verdict forms, . . .
transcripts from plea colloquies[, and] findings of fact and conclusions of law from a
bench trial"—to determine which set of elements formed the basis for the prior
conviction. *Dickey I*, 301 Kan. at 1038. If no, the prior burglary conviction must be
classified as a nonperson offense. 301 Kan. at 1039.

Smith's Leavenworth County case proceeded toward sentencing. As it had in the
Sedgwick County case, his PSI reflected the 1993 South Carolina burglary conviction
and scored it as a person felony. Smith objected, arguing that under the law in effect
when he entered his plea, it should be scored as a nonperson felony because it was
committed before the enactment of the KSGA. The district court held an evidentiary
hearing at which "the State presented evidence showing that the burglary was committed
on July 4, 1993," and the district court overruled Smith's objection but continued the
sentencing. *Smith*, 2017 WL 3113188, at *1.

On August 28, 2015, the Kansas Supreme Court overruled *Murdock I* in *Keel*. See
302 Kan. 560, Syl. ¶ 9. At this time, Smith had filed his initial appellate brief in the
Sedgwick County appeal but the State had not, and Smith had not yet been sentenced in
his Leavenworth County case. *Keel* held that no matter if a prior out-of-state conviction
occurred before or after the enactment of the KSGA, "the out-of-state conviction or
adjudication is classified to match the comparable *post-KSGA* criminal statute. If no
comparable post-KSGA criminal statute exists, then the out-of-state conviction or
adjudication must be classified as a nonperson offense." 302 Kan. at 581.

On October 13, 2015, Smith filed a pre-sentencing motion to withdraw plea in the
Leavenworth County case, arguing that he entered his plea because of a belief that his
South Carolina burglary would be classified as a nonperson offense, which would have
led to a lower criminal history score. The district court denied the motion.

5

On October 15, 2015, Smith filed his reply brief to this court in the Sedgwick County appeal and argued for the first time that he was entitled to relief under *Dickey I* because "the classification of his South Carolina burglary as a person offense for criminal history purposes necessarily required judicial factfinding in violation of his constitutional rights as described in *Apprendi* and *Descamps*." *Smith*, 2016 WL 1391767, at *2. Pursuant to an order from this court, the parties filed supplemental briefs on the applicability of *Dickey I* to Smith.

On November 6, 2015, the Leavenworth County District Court sentenced Smith to 19 months in prison for the trafficking contraband conviction, scoring the South Carolina burglary conviction as a person felony. In January 2016, Smith filed an untimely notice of appeal, and the district court granted his motion to appeal out of time.

Meanwhile, on April 8, 2016, this court filed its opinion in the Sedgwick County appeal. See *Smith*, 2016 WL 1391767. Applying *Dickey I*, this court held that the South Carolina burglary statute in effect when Smith committed the South Carolina burglary was a divisible statute and "one of the permutations of elements under which Smith could have committed burglary of a dwelling in South Carolina matches the elements of Kansas' [statute defining] burglary of a dwelling" in effect when Smith committed his crime of conviction in Sedgwick County. *Smith*, 2016 WL 1391767, at *9. This court thus held that the modified categorical approach was the proper avenue to determine whether the South Carolina burglary should be scored as a person or nonperson offense, and it *vacated* Smith's Sedgwick County sentence and remanded for further proceedings. 2016 WL 1391767, at *9-10. Specifically, this court directed:

> "The district court may examine the identified permissible documents in order to determine the nature of the offense. If the district court cannot determine the basis of the South Carolina burglary conviction or if it determines that it involved (1) entry of a structure not considered a dwelling in Kansas or (2) an intent to commit a crime other than a felony, theft, or sexual battery, then the South Carolina burglary must be classified

6

as a nonperson offense. If, however, the district court determines that the South Carolina burglary conviction falls within the parameters of the crime of burglary of a dwelling under applicable Kansas law, the South Carolina burglary should be classified as a person offense." 2016 WL 1391767, at *10.

The Kansas Supreme Court denied the State's petition for review and the mandate was issued by the clerk. See *State v. Smith*, 305 Kan. 1257 (2016). Thus, the order vacating Smith's original Sedgwick County sentence became final and the case was remanded to the district court for resentencing.

On remand, at a hearing on May 12, 2017, after considering exhibits offered by the State at an earlier hearing to prove Smith's criminal history, including an affidavit and arrest warrant for the South Carolina burglary conviction, the Sedgwick County District Court again ruled that Smith's South Carolina burglary conviction should be classified as a person felony for criminal history purposes. *State v. Smith*, 56 Kan. App. 2d 343, 346, 430 P.3d 58 (2018), *vacated and remanded by* Supreme Court order dated December 27, 2019. At the same hearing, the district court "resentenced Smith to 272 months in prison, the same as his original sentence." 56 Kan. App. 2d at 346. Smith timely filed a notice of appeal, but he did not try to docket the appeal until July 31, 2017.

Meanwhile, on July 21, 2017, another panel of this court issued its opinion in the Leavenworth County appeal. See *Smith*, 2017 WL 3113188. That panel held that the Leavenworth County District Court had not erred by denying Smith's motion to withdraw plea and, as relevant to this case, it also addressed whether the district court erred in classifying the South Carolina burglary conviction as a person offense. 2017 WL 3113188, at *2, 5. Smith argued that the district court had engaged in fact-finding prohibited by *Descamps* and *Dickey I* when it determined that the South Carolina burglary should be classified as a person offense. The panel noted the United States Supreme Court's decision in *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243,

2253-54, 195 L. Ed. 2d 604 (2016), which held that when a statute provides alternative ways of satisfying an element of the crime, a district court may not engage in judicial fact-finding under the guise of the modified categorical approach to determine whether a certain alternative occurred. *Smith*, 2017 WL 3113188, at *3.

The panel examined the 1993 South Carolina burglary statute and found that it "is divisible with respect to whether it has been committed in either a dwelling or a building." 2017 WL 3113188, at *4. It also noted, however, that South Carolina's "definition of dwelling is broader than Kansas' definition. For example, the South Carolina statute treats any outbuilding within 200 yards of a dwelling as a dwelling" for burglary purposes, while the Kansas statute does not. 2017 WL 3113188, at *4. Accordingly, although "dwelling" was an element of South Carolina burglary, the various buildings in South Carolina's definition of dwelling were merely alternative ways of satisfying the dwelling element and, under *Mathis*, the modified categorical approach was not constitutionally available to determine which alternative occurred in Smith's South Carolina burglary. *Smith*, 2017 WL 3113188, at *4. The panel concluded that the South Carolina burglary must be classified as a nonperson felony, and it vacated Smith's sentence and remanded to Leavenworth County District Court for resentencing. 2017 WL 3113188, at *4. The State did not petition for review and Smith's petition for review was denied.

*Smith's appeal from his May 12, 2017 resentencing in Sedgwick County*

About two and a half weeks after the opinion was filed in the Leavenworth County case, this court granted Smith's motion to docket his appeal out of time from his May 12, 2017 resentencing in Sedgwick County, which is the appeal presently before this court. On January 9, 2018, Smith filed his first brief and argued that the district court erred in resentencing him for two reasons. First, Smith argued that the district court was wrong to apply a modified categorical approach to determine whether his prior out-of-state

conviction could be classified as a person felony. Second, he argued that in determining his prior criminal history, the district court considered documents, including affidavits and arrest warrants, that were beyond the limited class of permissible documents a district court should consider under the modified categorical approach according to *Descamps*.

Before the State filed its response to Smith's first brief, our Supreme Court issued its decision in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), which addressed whether a prior second-degree burglary conviction in Missouri should be classified as a person felony for Kansas criminal history purposes.

> "To resolve the issue, the court construed the term 'comparable offenses' in K.S.A. 2017 Supp. 21-6811(e)(3). The court held that '[f]or an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime.' 307 Kan. at 562. Essentially, 'the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced.' 307 Kan. at 562."
> *Smith*, 56 Kan. App. 2d at 349.

When the State filed its initial brief in this appeal on May 10, 2018, rather than responding to the arguments Smith made in his brief, the State shifted gears and focused on *Wetrich*. See *Smith*, 56 Kan. App. 2d at 346-47. "The State concede[d] that *Wetrich* 'appears to be on point with respect to Smith's substantive argument regarding the use of the modified categorical approach,'" but it argued that *Wetrich* constituted a change in the law that could not be applied to Smith's case because of a 2017 amendment to K.S.A. 22-3504 that stated a sentence is not rendered illegal by a change in the law that occurs after the sentence is pronounced. *Smith*, 56 Kan. App. 2d at 347.

In his reply brief, Smith "argue[d] that the 2017 amendment to K.S.A. 22-3504, which went into effect six days after he was resentenced, cannot be applied retroactively to affect his sentence" and that *Wetrich* was not a change in the law. *Smith*, 56 Kan. App.

9

2d at 347. Without resolving the first question, this panel held that "*Wetrich* [did] not amount to a change in the law within the meaning of the 2017 amendment to the definition of an illegal sentence" but was "a reinterpretation of an existing statute." *Smith*, 56 Kan. App. 2d at 352-53.

This panel then analyzed whether Smith's 2017 sentence was illegal under *Wetrich*. *Smith*, 56 Kan. App. 2d at 355. Although this panel did not refer to the other panel's 2017 opinion on the same issue, its analysis largely paralleled that previous opinion, concluding that the South Carolina definition of dwelling was broader than Kansas' and that South Carolina's intent element required the intent to commit any crime, while Kansas' intent element requires the intent to commit a felony, theft, or sexual battery. 56 Kan. App. 2d at 356. As a result, "[b]ecause the South Carolina burglary statute that Smith was convicted under is not identical to or narrower than the Kansas burglary statute in effect when Smith committed his current crime of conviction, his prior South Carolina burglary cannot be scored as a person felony for criminal history purposes." 56 Kan. App. 2d at 356. This panel vacated Smith's Sedgwick County sentence and "remand[ed] for resentencing with directions to classify Smith's South Carolina burglary conviction as a nonperson felony for criminal history purposes." 56 Kan. App. 2d at 356.

But the State timely petitioned for review and in March 2019, our Supreme Court placed the petition for review on hold. On April 19, 2019, our Supreme Court issued its opinion in *Murdock II*, holding that "the legality of a sentence under K.S.A. 2018 Supp. 22-3504 is controlled by the law in effect at the time the sentence was pronounced." 309 Kan. at 585-86. For Murdock, that meant that his second sentence, which was imposed in accordance with the mandate in *Murdock I*, was legal when it was imposed and did not become illegal later when *Keel* overruled *Murdock I*. *Murdock II*, 309 Kan. at 585.

10

On June 7, 2019, our Supreme Court issued its opinion in *Newton*, an appeal from the denial of a 2014 motion to correct an illegal sentence imposed in 2008. Although the parties briefed the applicability and impact of the 2017 amendment to K.S.A. 22-3504 and of the Supreme Court's decision in *Wetrich*, the *Newton* court affirmed the district court's denial of Newton's motion to correct illegal sentence, reasoning only:

> "At the time Newton was sentenced, Kansas caselaw construed K.S.A. 21-4711(e) to mean '[f]or purposes of determining criminal history, the offenses need only be comparable, not identical.' '[T]he comparable offense' was 'the closest approximation' to the out-of-state crime. In *Murdock II*'s wake [Newton] cannot argue *Wetrich* makes his sentence, which was legal when it was imposed, illegal. [Citations omitted.]" *Newton*, 309 Kan. at 1073-74.

On June 14, 2019, our Supreme Court issued its opinion in *Weber*, a case that involved the 2014 denial of a motion to correct an illegal sentence that had become final in 2007. *Weber* expressly held that *Wetrich* constituted a change in the law, and "[u]nder the law at the time of Weber's [2007] sentencing, as [Weber] concedes, '[f]or purposes of determining criminal history, the offenses need only be comparable, not identical.' In *Murdock II*'s wake, [Weber] cannot argue *Wetrich* makes his sentence, which was legal when it was imposed, illegal. [Citations omitted.]" *Weber*, 309 Kan. at 1209.

On December 27, 2019, our Supreme Court issued an order summarily granting the State's petition for review of this court's 2018 opinion. The Supreme Court vacated this court's opinion and remanded the case to this court for reconsideration in light of *Murdock II*, *Newton*, and *Weber*.

On December 30, 2019, this court ordered the parties to file new briefs in this appeal that would "replace all prior briefs," cautioning Smith that his "brief must include all arguments as to why the district court erred in classifying [his] prior South Carolina burglary conviction as a person offense for criminal history purposes."

11

Smith's brief, filed on January 28, 2020, raises three issues. First, he argues that under *Murdock II*, *Wetrich* controls whether Smith's South Carolina burglary is classified as a person or a nonperson offense because this is a direct appeal from his 2017 resentencing, not an appeal from the denial of a motion to correct illegal sentence. And he contends that under *Wetrich*, his South Carolina burglary must be classified as a nonperson offense. Second, he argues that at the 2017 remand hearing, the State did not provide sufficient evidence that his South Carolina burglary conviction arose under the subsection that criminalized burglary of a dwelling, as opposed to the subsection that criminalized burglary of a building when at least one certain aggravating circumstance is present. Third, Smith contends that even if this court applies the law in effect at his original 2006 sentencing, *Dickey I* controls and the district court erred by considering documents outside the scope of what *Dickey I* allows in a modified categorical approach.

The State responds that Smith is not entitled to the benefit of *Wetrich* because his initial direct appeal concluded in 2009, long before *Wetrich*, and the relevant law is what was in effect at his original sentencing in 2006. The State similarly argues that *Dickey I* does not affect the documents the district court considered at the 2017 resentencing because *Dickey I* was a change in the law that also occurred after Smith's initial direct appeal had concluded. Moreover, even if *Dickey I* applied at the 2017 resentencing, the State argues that the documents considered were permissible. Thus, the State asks this court to affirm the 2017 sentence. Smith filed a reply brief seeking to distinguish the caselaw cited by the State in support of its position that *Wetrich* does not apply here.

Neither of Smith's briefs nor the State's brief acknowledges the 2017 opinion from this court in Smith's Leavenworth County case that held that the South Carolina burglary conviction must be scored as a nonperson offense. As a result, on March 16, 2020, this court issued a show-cause order and directed the parties to address whether the 2017 decision "should control the result in the above-captioned case under the doctrine[s] of

12

issue preclusion, claim preclusion or res judicata." The parties filed their responses; unsurprisingly, Smith argues that the 2017 decision controls, and the State disagrees.

DOES THIS COURT'S 2017 DECISION CONTROL THE RESULT IN THIS APPEAL?

In its response to this court's show-cause order, the State asserts that this panel is not bound by the 2017 decision, simply arguing that one panel of the Court of Appeals is not bound by another panel's decision. The State also summarily contends that the 2017 decision was wrong. For his part, Smith argues that the 2017 decision controls the result in this appeal under the doctrines of issue preclusion and claim preclusion. The Kansas Supreme Court has instructed that although "the concept of res judicata is broad enough to encompass both claim preclusion and issue preclusion, the modern trend is to refer to claim preclusion as res judicata and issue preclusion as collateral estoppel." See *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002).

Although neither party has challenged this court's authority to sua sponte raise the applicability of collateral estoppel or res judicata, we note that such action is within this court's discretion. See *State v. Parry*, 305 Kan. 1189, 1194, 390 P.3d 879 (2017) (holding the Court of Appeals did not err by "rais[ing] the law of the case doctrine's applicability on its own initiative"). Kansas appellate courts review the application of res judicata or collateral estoppel de novo. See *Rhoten v. Dickson*, 290 Kan. 92, 106, 113, 223 P.3d 786 (2010).

The State's argument that this panel is not bound by decisions of other panels of the Kansas Court of Appeals is correct. The Kansas Supreme Court has noted that one panel has "the right to disagree with a previous panel of the same court." See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010). But as Smith points out, Supreme Court Rule 7.04(g)(2) (2020 Kan. S. Ct. R. 46) provides: "An unpublished memorandum

opinion: (A) is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel."

Moreover, the general rule that Court of Appeals panels may disagree usually refers to different panels' interpretation of the law and its application to varying facts. See *Urban*, 291 Kan. at 223 (noting that the *Urban* panel was not bound by the decision in *State v. Hampton*, No. 91,092, 2004 WL 2160787 [Kan. App. 2004] [unpublished opinion]); *Uhlman v. Richardson*, 48 Kan. App. 2d 1, 13-14, 287 P.3d 287 (2012) (declining to follow the result in *Almack v. Steeley*, 43 Kan. App. 2d 764, 230 P.3d 452 [2010]). In contrast, at least one panel of this court has applied a preclusive doctrine when the cases in question involve the same parties and address the same issue on the same facts.

In *State v. Parry*, No. 110,671, 2014 WL 1708137, at *1 (Kan. App. 2014) (unpublished opinion), a panel of this court affirmed a district court's order suppressing certain evidence. The State then dismissed the prosecution without prejudice and immediately refiled the same charges. When the district court again granted the defendant's motion to suppress, the State again appealed. *State v. Parry*, 51 Kan. App. 2d 928, 929-30, 358 P.3d 101 (2015). That appeal was assigned to a different panel of this court and a majority of that panel held that the law of the case doctrine "precludes the State from again litigating the constitutionality of the search." 51 Kan. App. 2d at 930. On a petition for review, the Kansas Supreme Court affirmed. *Parry*, 305 Kan. 1189.

Thus, although the State's assertion that this panel is not bound by the decision of another panel is correct, generally speaking, these are unique circumstances—the prior decision in question resolved the same issue, involved the same parties, and arose on the same facts now before this panel. As Smith contends, res judicata and collateral estoppel both apply here and preclude the State from arguing that Smith's 1993 South Carolina burglary should be classified as a person offense.

14

*Res judicata*

> "'In Kansas, there are four requirements to apply res judicata: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity in the quality of persons for or against whom [the] claim is made. In other words, "(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits."' [Citations omitted.]" *Bogguess v. State*, 306 Kan. 574, 580, 395 P.3d 447 (2017).

As Smith argues in his response to this court's show-cause order, all four requirements are met. This appeal and Smith's Leavenworth County appeal sought to change the criminal history classification of his South Carolina burglary conviction from person to nonperson. Both appeals were based on claims that the sentence resulting from a person classification of that crime was illegal. Smith and the State of Kansas were the only parties to both cases. It matters not that the cases were prosecuted in different counties—the parties are the same. And the Leavenworth County appeal resulted in a final judgment on the merits from the Court of Appeals in 2018, since the State did not petition for review and Smith's petition for review in that appeal was denied.

*Collateral estoppel*

Collateral estoppel "prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action." *In re Tax Appeal of Fleet*, 293 Kan. 768, 778, 272 P.3d 583 (2012).

> "'Collateral estoppel applies where (1) a prior judgment has been rendered on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties are the same or in privity, and (3) the issue litigated has been determined and is necessary to support the judgment.' [Citation omitted.]" *In re Easterberg*, 309 Kan. 490, 502, 437 P.3d 964 (2019).

15

Once again, the circumstances now before the court satisfy these requirements. The 2017 decision rendered a judgment on the merits of the person or nonperson classification of Smith's South Carolina burglary conviction for Kansas criminal history purposes. The material facts in the Leavenworth County appeal do not differ from those present in this case. The parties are the same in both cases and the classification issue was litigated, determined, and was necessary to support the judgment in the 2017 decision. For these reasons, collateral estoppel also bars relitigation of the issue here.

As a final note, the preclusive effect of a final judgment on the classification of a prior conviction as a person or nonperson offense for Kansas criminal history purposes has been at least implicitly recognized by the Kansas Supreme Court. As set forth above, *Dickey I* was a direct appeal taken from a conviction, and it resolved whether Dickey's prior burglary adjudication should be classified as a person or nonperson felony, concluding that it should be classified as a nonperson felony. See 301 Kan. at 1039-40. But at the same hearing at which the district court pronounced the sentence that led to the opinion in *Dickey I*, the district court also revoked probation in four earlier cases and imposed the sentences already pronounced in those cases. *State v. Dickey*, 305 Kan. 217, 218-19, 380 P.3d 230 (2016) (*Dickey II*).

Dickey appealed the probation revocations in an appeal separate from his direct appeal. Those underlying sentences had been calculated using a criminal history score that included a person classification of Dickey's prior burglary adjudication, and Dickey claimed that the underlying sentences were therefore illegal. After explaining why Dickey's challenge to the sentences as illegal was properly before the court, the Kansas Supreme Court concluded: "And that claim is identical to, and controlled by, our determination in *Dickey I* that the exact prior conviction at issue here was in fact misclassified." *Dickey II*, 305 Kan. at 222. Thus, the Kansas Supreme Court vacated the underlying sentences and remanded for recalculation of Dickey's criminal history and resentencing. 305 Kan. at 222. *Dickey II* supports this court similarly finding that the

16

2017 decision that held Smith's South Carolina burglary conviction should be classified as a nonperson offense controls the outcome here.

In summary, the preclusive doctrines of res judicata and collateral estoppel both act to prevent relitigation of the appropriate person or nonperson classification of Smith's South Carolina burglary conviction for criminal history purposes. The sole issue in this appeal is identical to, and should be controlled by, this court's decision in *Smith*, 2017 WL 3113188, that the exact prior conviction at issue here was in fact misclassified. See *Dickey II*, 305 Kan. at 222. For this reason, we vacate Smith's current sentence and remand with directions to classify the South Carolina burglary as a nonperson offense, recalculate Smith's criminal history score, and resentence him based on that score.

## DOES *WETRICH* APPLY TO SMITH'S APPEAL OF HIS 2017 RESENTENCING?

Although we could dispose of this appeal under principles of res judicata and collateral estoppel, we will also address the first substantive claim Smith has raised in his brief before this court. Smith claims that our Supreme Court's holding in *Wetrich* applies to his direct appeal of his May 12, 2017 resentencing because *Wetrich* was decided while this direct appeal has been pending. And under the holding in *Wetrich*, Smith's South Carolina burglary conviction must be classified as a nonperson felony because the elements of the applicable South Carolina statute are broader than the elements of the applicable Kansas statute. The State disagrees, arguing that Smith's direct appeal concluded in 2009 and the present appeal is merely a continuation of the appeal begun in 2014 when Smith moved to correct his illegal sentence.

Smith's underlying claim is that his sentence imposed on May 12, 2017, is illegal because the district court incorrectly classified his 1993 South Carolina burglary conviction as a person felony for criminal history purposes. Whether a prior conviction was properly classified as a person or nonperson crime for criminal history purposes

17

raises a question of law subject to unlimited review. *Dickey I*, 301 Kan. at 1034. Likewise, whether a sentence is illegal within the meaning of K.S.A. 2019 Supp. 22-3504 is a question of law over which this court has unlimited review. 301 Kan. at 1034.

"[T]he legality of a sentence under K.S.A. 2018 Supp. 22-3504 is controlled by the law in effect at the time the sentence was pronounced." *Murdock II*, 309 Kan. at 585-86. But the holding in *Murdock II* "does not disturb our longstanding rule that in a direct appeal, a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending. [Citation omitted.]" 309 Kan. at 591. "Put simply, a party may seek and obtain the benefit of a change in the law during the pendency of a direct appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced." 309 Kan. at 591-92.

Smith asserts that the holding in *Wetrich* applies to this direct appeal of his May 12, 2017 resentencing. But the State argues that the present appeal is merely a continuation of the appeal begun in 2014 when Smith moved to correct his illegal sentence. In support, the State directs this court to *State v. Lewis*, No. 118,401, 2019 WL 6041667 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* December 16, 2019. The State claims that the appeal in *Lewis* occurred in the same procedural posture as this case and correctly concluded that the law in effect at the time of the original sentencing controlled the outcome of the appeal. See 2019 WL 6041667, at *3, 5. Like Smith, Lewis filed a motion to correct illegal sentence in 2014, arguing that a sentence he received long before—in 2007—was illegal because of the erroneous classification as a person felony of a prior out-of-state burglary conviction. The district court denied Lewis' motion, and he appealed, just like Smith. And, as it happened to Smith, a panel of this court reversed the denial of his motion to correct illegal sentence and remanded to the district court for further proceedings. See 2019 WL 6041667, at *1.

But the State does not acknowledge a critical procedural difference between *Lewis* and this case. This court never vacated Lewis' original sentence. In Lewis' original appeal, this court reversed and remanded

"for the district court to determine—by looking at documents from the 1978 Texas case—whether the prior conviction actually involved a burglary of a habitation as the PSI indicates. After doing so, the district court can determine whether the 1978 Texas burglary conviction is comparable to Kansas' burglary statute in effect at the time Lewis committed the current crimes." *State v. Lewis*, No. 113,438, 2016 WL 1546133, at *5 (Kan. App. 2016) (unpublished opinion).

Similarly, the mandate reflected that *Lewis* was "reversed and remanded with directions." But the opinion resolving the appeal of Smith's motion to correct illegal sentence stated: "[W]e *vacate Smith's sentence* and remand for further proceedings . . . ." (Emphasis added.) *Smith*, 2016 WL 1391767, at *10. And the mandate issued reflected "that the appellant's sentence be vacated and the case remanded with directions."

Lewis was not resentenced on remand; the district court found that his prior burglary "was properly scored as a person crime," and Lewis appealed from that decision. *Lewis*, 2019 WL 6041667, at *1. So Lewis' second appeal was clearly an appeal from the denial of his motion to correct illegal sentence. In contrast, Smith was resentenced on remand, and he appealed from that resentencing. See *Smith*, 56 Kan. App. 2d at 346. Despite somewhat confusing language in this court's 2018 opinion, the district court on remand did not "again [deny] Smith's motion to correct his sentence." See 56 Kan. App. 2d at 343. Rather, the district court, as instructed by this court, "determine[d] whether his South Carolina burglary conviction should be classified as a person or nonperson offense for criminal history purposes" and then resentenced Smith, as this court had vacated his original sentence. See *Smith*, 2016 WL 1391767, at *10; see also *Smith*, 56 Kan. App. 2d at 346.

This distinction is critical because Smith's resentencing means that his current trip to the appellate courts is a direct appeal of that resentencing, despite his continuing to assert that the sentence imposed there was illegal. See *Baker v. State*, 297 Kan. 486, Syl., 303 P.3d 675 (2013) (holding that "the 1-year time limitation for bringing an action under K.S.A. 60-1507 begins to run after the period *for taking a direct appeal from the new sentence expires.*") (Emphasis added.) Smith's current appeal is not a continuation of the prior proceedings involving his 2014 motion to correct illegal sentence. It is a direct appeal of his new sentence imposed by the district court on May 12, 2017.

To sum up, Smith filed a motion to correct illegal sentence in 2014 which the district court denied. On appeal, this court vacated Smith's sentence and remanded to the district court for resentencing. The order vacating Smith's original sentence became final when our Supreme Court denied the State's petition for review. That action marked the end of the proceedings on Smith's motion to correct illegal sentence. On remand, the district court resentenced Smith as directed by this court. Smith timely appealed from that sentence—his only sentence that has any operative effect. This constitutes a direct appeal of his sentence imposed by the district court on May 12, 2017.

Under *Murdock II*, "a party may seek and obtain the benefit of a change in the law during the pendency of a direct appeal." 309 Kan. at 591-92. Our Supreme Court filed its decision in *Wetrich* on March 9, 2018, while Smith's direct appeal from his resentencing was pending in the Court of Appeals. And *Weber* recognized *Wetrich* as a change in the law. *Weber*, 309 Kan. at 1209. Smith is therefore entitled to the benefit of *Wetrich*. This panel applied *Wetrich* in its now-vacated 2018 opinion:

> "Under the identical-or-narrower rule [set forth in *Wetrich*], a defendant's prior out-of-
> state conviction can only be scored as a person felony for criminal history purposes if the
> prior crime's elements are identical to, or narrower than, the elements of the comparable
> Kansas crime. *Wetrich*, 307 Kan. at 562.

"In 1993, the South Carolina burglary statute stated, in relevant part:

"'(A) A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein.

"'(B) A person is guilty of burglary in the second degree if the person enters a building without consent and with intent to commit a crime therein, and either:

'(1) When, in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:

(a) Is armed with a deadly weapon or explosive; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument; or

(d) Displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or

'(2) The burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

'(3) The entering or remaining occurs in the nighttime.' S.C. Code Ann. § 16-11-312 (2003).

"The Kansas burglary statute in effect when Smith committed his current crime of conviction stated:

"'Burglary is knowingly and without authority entering into or remaining within any:

(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or

(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein.' K.S.A. 21-3715.

"South Carolina defined a dwelling, at that time, as a

"'dwelling house, any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or

21

to the same establishment of which it is an appurtenance shall be deemed parcels.' S.C. Code Ann. § 16-11-10 (2003).

"Kansas defined a dwelling as 'a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence.' K.S.A. 21-3110(7).

"South Carolina's definition of a burglary of a dwelling is significantly broader than Kansas' definition during the time in question. Under the South Carolina definition of burglary, a defendant could be convicted of a burglary of any outbuilding within 200 yards of a dwelling. S.C. Code Ann. § 16-11-312; S.C. Code Ann. § 16-11-10. South Carolina's definition is also broader with the issue of intent. Under the South Carolina law, Smith could have been convicted for entering with the intent to commit any crime. See S.C. Code Ann. § 16-11-312. In contrast, to be convicted of burglary in Kansas requires a defendant to have 'intent to commit a felony, theft or sexual battery.' See K.S.A. 21-3715.

"Because the South Carolina burglary statute that Smith was convicted under is not identical to or narrower than the Kansas burglary statute in effect when Smith committed his current crime of conviction, his prior South Carolina burglary cannot be scored as a person felony for criminal history purposes. See *Wetrich*, 307 Kan. at 562. The district court erred in finding otherwise." *Smith*, 56 Kan. App. 2d at 355-56.

This reasoning remains sound and the State's operative brief does not argue that if *Wetrich* applies, the result should be different than it was when this court applied *Wetrich* in 2018. Applying *Wetrich* to Smith's current sentence, we vacate Smith's sentence and remand to the district court with directions to reclassify Smith's South Carolina burglary conviction as a nonperson felony, recalculate Smith's criminal history score, and resentence him in accordance with the new score. Based on this disposition, we do not need to address the other arguments Smith has raised in this appeal.

Sentence vacated and case remanded with directions.

* * *

POWELL, J., dissenting: The Kansas Supreme Court has recently made it very clear "the legality of a sentence under K.S.A. 22-3504 is controlled by the law in effect at the time the sentence was pronounced." *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019) (*Murdock II*). Moreover, "a sentence that was legal when pronounced does not become illegal if the law subsequently changes." 309 Kan. 585, Syl. ¶ 1. For reasons I will explain, these bedrock principles lead me to conclude that when Smith's sentence was originally pronounced it was a legal one. Because the majority holds otherwise, I dissent.

Smith was originally sentenced on December 19, 2006, and the district court based its sentence upon Smith's C criminal history score, determined in part by classifying his prior 1993 South Carolina burglary of a dwelling second-degree conviction as a person felony. Smith's conviction and sentence were upheld on direct appeal. See *State v. Smith*, No. 113,297, 2016 WL 1391767, at *1 (Kan. App. 2016) (unpublished opinion) (*Smith II*) (appeal of denial of motion to correct illegal sentence); *State v. Smith*, No. 97,951, 2008 WL 4416029, at *7-8 (Kan. App. 2008) (unpublished opinion) (*Smith I*) (direct appeal).

As the majority chronicles in detail, the lengthy litigation in this case was commenced when Smith filed his motion to correct an illegal sentence on June 9, 2014. In his motion, Smith claimed his criminal history had been incorrectly calculated because his prior 1993 South Carolina burglary conviction had been improperly scored as a person felony, thus making his sentence illegal. The district court denied the motion which prompted Smith to appeal.

As our Supreme Court has admitted: "[I]nterface of our statutory interpretation of the KSGA criminal history provisions and the thick overlay of changes in federal

23

constitutional law has created an evolving body of Kansas law." *State v. McAlister*, 310 Kan. 86, 90, 444 P.3d 923 (2019). This shifting sentencing jurisprudence emanating from our Supreme Court dictated a remand to the district court by this court in *Smith II*; another appeal by Smith to this court challenging the district court's ruling on remand; yet another decision from this court in *State v. Smith*, 56 Kan. App. 2d 343, 430 P.3d 58 (2018) (*Smith III*); and finally the vacating of this court's *Smith III* opinion by the Kansas Supreme Court with directions that we consider the legality of Smith's sentence in light of *Murdock II*; *State v. Weber*, 309 Kan. 1203, 442 P.3d 1044 (2019); and *State v. Newton*, 309 Kan. 1070, 442 P.3d 489 (2019).

According to the law in effect when Smith was sentenced in December 2006, a defendant's prior out-of-state convictions are counted for purposes of calculating that defendant's criminal history. Such convictions must be "classified as either a felony or a misdemeanor according to the convicting jurisdiction." K.S.A. 21-4711(e). There has been no dispute that Smith's 1993 South Carolina burglary conviction should be classified as a felony.

The law also requires that any out-of-state conviction be classified as a person or nonperson crime. K.S.A. 22-4711(e). Whether Smith's 1993 burglary conviction should be classified as a person or nonperson crime has vexed us for years. The question is important because the classification of this burglary conviction as either a person or nonperson crime affects Smith's criminal history score and, thus, the legality of his sentence.

Turning again to the law in effect in December 2006, K.S.A. 22-4711(e) stated: "In designating a crime as person or nonperson comparable offenses shall be referred to." This provision was construed to mean that for purposes of criminal history, "the offenses need only be comparable, not identical." *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d

1054 (2015). "'[T]he comparable offense' was 'the closest approximation' to the out-of-state crime." *Weber*, 309 Kan. at 1206; see *Vandervort*, 276 Kan. at 179. Our Supreme Court made clear in *Weber* this "closest approximation" test was to be used to determine comparability for purposes of criminal history for sentences pronounced prior to *Wetrich*'s "identical to, or narrower than" test enunciated in 2018. 309 Kan. at 1207, 1209; see *Newton*, 309 Kan. at 1073-74; *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018) ("[E]lements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced.").

The PSI from Smith's 2006 sentencing referred to Smith's 1993 South Carolina burglary conviction as Burglary of Dwelling 2nd Degree. In relevant part, the 1993 South Carolina burglary statute states:

"(A) A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein.

"(B) A person is guilty of burglary in the second degree if the person enters a building without consent and with intent to commit a crime therein, and either:

"(1) When, in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:

(a) Is armed with a deadly weapon or explosive; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument; or

(d) Displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or

25

"(2) The burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

"(3) The entering or remaining occurs in the nighttime." S.C. Code Ann. § 16-11-312 (2003).

S.C. Code Ann. § 16-11-310 (2003) defines dwelling in the context of burglary to include the definition contained in S.C. Code Ann. § 16-11-10 and "the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person." S.C. Code Ann. § 16-11-10 (2003) states:

"With respect to the crimes of burglary and arson and to all criminal offenses which are constituted or aggravated by being committed in a dwelling house, any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the same establishment of which it is an appurtenance shall be deemed parcels."

The Kansas burglary statute from 2006 defines burglary as follows:

"Burglary is knowingly and without authority entering into or remaining within any:

"(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

"(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or

26

"(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein." K.S.A. 21-3715.

The term "dwelling" in the context of burglary is defined as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 21-3110(7). A burglary committed contrary to subsection (a) is a person felony while a burglary committed contrary to subsections (b) or (c) are nonperson felonies. K.S.A. 21-3715. In short, any Kansas burglary committed in a dwelling is a person felony while all others are nonperson felonies.

The sentencing law in effect in 2006 requires a prior burglary conviction to be classified as either a person or nonperson crime for criminal history purposes as follows:

"(1) As a prior person felony if the prior conviction or adjudication was classified as a burglary as described in subsection (a) of K.S.A. 21-3715 and amendments thereto.

"(2) As a prior nonperson felony if the prior conviction or adjudication was classified as a burglary as described in subsection (b) or (c) of K.S.A. 21-3715 and amendments thereto.

"The facts required to classify prior burglary adult convictions and juvenile adjudications must be established by the state by a preponderance of the evidence." K.S.A. 21-4711(d).

Thus, any prior burglary conviction had to be scored as either a person or nonperson crime depending on whether the burglary had been committed in a dwelling.

When comparing South Carolina's second-degree burglary statute, S.C. Code Ann. § 16-11-312(A), and its definition of "dwelling" contained in S.C. Code Ann. §§ 16-11-

310 and 16-11-10 with Kansas' burglary statute, K.S.A. 21-3715, it is obvious they are comparable as they prohibit similar conduct. While South Carolina's definition of "dwelling" is broader than the Kansas definition contained in K.S.A. 21-3110(7), that does not matter under *Vandervort*'s comparability analysis; the statutes are certainly similar and therefore comparable. Moreover, the district court specifically found by a preponderance of the evidence, after examining the charging documents and other exhibits presented at the remand hearing, that Smith's South Carolina burglary had been committed with the intent to commit a theft and in a dwelling. See generally *State v. May*, 39 Kan. App. 2d 990, 996, 186 P.3d 847 (2008) (defendant's prior burglaries properly classified as person crimes as sentencing court determined they were committed in dwellings), *rev. denied* November 4, 2008. Sufficient evidence supports the district court's findings.

Parenthetically, to the extent Smith is complaining the district court's factual findings violate his constitutional rights as expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015), he is prohibited from making such a claim in a motion to correct an illegal sentence. See *State v. Bryant*, 310 Kan. 920, 922-23, 453 P.3d 279, 281 (2019). In *Bryant*, the defendant claimed his sentence was illegal, arguing his 2005 sentence was unconstitutional under *Apprendi*, *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Mathis v. United States*, 579 U.S.___, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016), when the district court engaged in impermissible fact-finding when designating his 1981 Missouri second-degree burglaries as person felonies. Our Supreme Court rejected that argument and held the defendant "cannot use a motion to correct an illegal sentence to argue that his sentence is unconstitutional." *Bryant*, 310 Kan. at 922, 453 P.3d at 281. Because Smith's argument that his constitutional rights were violated cannot be raised in a motion to correct an illegal sentence, his 1993 South Carolina burglary conviction was properly scored as a person felony, and his sentence imposed in 2006 was a legal one.

The majority reaches a different conclusion based on two different theories. First, it states that according to the doctrines of res judicata and collateral estoppel, the parties are bound by the panel's decision in yet another case involving Smith, which held that Smith's 1993 South Carolina burglary conviction had to be classified as a nonperson crime. See *State v. Smith*, No. 115,830, 2017 WL 3113188, at *4 (Kan. App. 2017) (unpublished opinion). I see numerous problems with the majority's holding, the most obvious being that "K.S.A. 22-3504's statutory directive that an illegal sentence may be corrected 'at any time' supersedes the normal procedural hurdles of res judicata and retroactivity." *McAlister*, 310 Kan. at 90. Invoking res judicata is also problematic because it typically must be asserted by one of the parties. See *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262, 261 P.3d 943 (2011). Here, Smith never raised res judicata; we did. And the doctrine of collateral estoppel is not to be invoked when "'a new determination is warranted in order to take account of an intervening change in the applicable legal context.'" *Kansas Public Employees Retirement System v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 671, 941 P.2d 1321 (1997) (quoting Restatement [Second] of Judgments § 28 [1982]). Collateral estoppel is also inapplicable where the legal issues are different. See *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 464, 980 P.2d 1022 (1999) (defendant who obtained favorable suppression ruling in DUI prosecution barred from invoking collateral estoppel against administrative agency in driver's license suspension proceeding).

My strongest objection to invoking these doctrines in this instance is the fact the law to be applied in this case is different from *Smith*, 2017 WL 3113188. That *Smith* panel addressed the legality of Smith's 2015 sentence as part of a direct appeal. There, Smith appealed the district court's refusal to grant his presentence motion to withdraw plea and challenged his criminal history score, claiming the district court wrongly classified his 1993 South Carolina burglary conviction as a person felony. Because it was a direct appeal, the panel applied *Dickey* and *Mathis*, decisions issued in 2015 and 2016 respectively, to conclude Smith's 1993 South Carolina burglary conviction had to be

scored as a nonperson felony—consistent with *Murdock II*'s holding that "a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending." See 309 Kan. at 591; *Smith*, 2017 WL 3113188, at *4. The case before us involves Smith's motion to correct an illegal sentence originally imposed in 2006, which, as I have explained, requires us to examine the legality of Smith's sentence under the law as it existed in 2006. Res judicata and collateral estoppel cannot transform Smith's 2006 legal sentence into an illegal one.

Second, the majority takes the position that Smith's resentencing in 2017 now makes this appeal a direct appeal from that sentence, thus entitling Smith to the benefit of subsequent changes in the law occurring after his sentence, most notably, *Wetrich*'s identical-or-narrower method of comparing an out-of-state conviction with a Kansas crime for criminal history purposes. I disagree with this thinking as well for the simple reason it is contrary to *Murdock II* and amounts to moving the sentencing law goalposts. I concur with the State's argument that the appeal before us is not a direct appeal case but an appeal in a motion to correct an illegal sentence case, which is a collateral attack on a sentence. I submit my view is bolstered by our illegal sentence statute, which describes a direct appeal as "an appeal from the judgment of conviction." K.S.A. 2019 Supp. 22-3504(c).

I also disagree with the majority because the district court's resentencing in 2017 was a result of the mandate from our *Smith II* decision and should not be characterized as a resentencing. See *State v. Tafoya*, 304 Kan. 663, 669, 372 P.3d 1247 (2016) (remand from appellate court to district court to correct error is not remand for resentencing). I agree with the view that any corrections to a sentence as part of a motion to correct an illegal sentence should be considered just that—a correction of a sentence and not a resentencing. See *State v. Jamerson*, 309 Kan. 211, 219-223, 433 P.3d 698 (2019) (Johnson, J., concurring and dissenting).

Finally, even if I were to grudgingly agree that Smith was "resentenced" by the district court in 2017 as a result of Smith's original sentence being vacated by the *Smith II* panel, the resentencing has no force or effect because, as I have explained, Smith's original sentence from 2006 is a legal one and cannot be modified. See *Jamerson*, 309 Kan. at 218 (no authority to modify legal sentences). The *Smith II* panel never declared Smith's sentence to be illegal; therefore, any language in the opinion vacating the sentence was both superfluous and improper as it should have merely remanded the case. See *Tafoya*, 304 Kan. at 670 (substance of appellate court ruling controls over form). Also, the district court on remand never declared Smith's sentence illegal and merely reimposed the original sentence in an attempt to comply with the *Smith II* mandate. Both our prior opinions in *Smith II* and *Smith III* were wrongly decided in light of *Murdock II*'s command that we judge the legality of a sentence by the law in existence at the time the sentence was imposed. Moreover, to the extent *Smith II* became the law of the case because the Kansas Supreme Court denied the State's petition for review of that decision, any binding effect of *Smith II* dissolves because an exception to the law of the case doctrine exists where "a controlling authority has made a contrary decision regarding the law applicable to the issues." See *State v. Kleypas*, 305 Kan. 224, 245, 382 P.3d 373 (2016). *Murdock II* is the new and subsequent controlling legal authority which compels the result that Smith's 2006 sentence is legal because according to the law in effect in 2006 his 1993 South Carolina burglary conviction was correctly classified as a person felony.

I would affirm the district court.

31